Jones v. Insurance Co. of North America.

---

*DECEMBER TERM, 1802.                          [*246

JONES *et al. v.* INSURANCE COMPANY OF NORTH AMERICA.

*Insurance on freight.—Partial loss.—Exception.*

The expenses incurred for seamen's wages, provisions and extra-pilotage, during an embargo on a vessel, are recoverable, as a partial loss, from the underwriter on freight.
A bill of exceptions to the charge of the court, may be tendered, at any time before the jury have delivered their verdict, even when they are ready to deliver it, and are at the bar.

COVENANT, on a policy of insurance, dated the 30th of November 1792, upon the freight of the brig, called the Benjamin Franklin, valued at $3000, for a voyage " at and from Bordeaux to a port in the United States," against

213

Jones v. Insurance Co. of North America.

"the seas, &c., arrests, restraints, detainments of all kings, &c.," in the usual terms of the printed policies. The premium was six per cent.; and, it was declared, that this insurance is made on the freight of the above brig, valued at the sum insured, for two-thirds thereof, &c."

On the evidence, it appeared, that the brig sailed from Bordeaux, on the 17th day of November 1792, bound for Philadelphia; but on the 20th of November, before she had reached the mouth of the Garonne, she was embargoed by the French government. The embargo continued until the 10th of January 1793; when the brig prosecuted her voyage; arrived at Philadelphia, on the 5th of March; and there, on delivery of the cargo, the assured received the amount of the freight, originally stipulated to be paid, from the respective shippers.

During the embargo, however, an expense was incurred, for the seamen's wages and provisions, and extra-pilotage, amounting to $875.13, for two-thirds of which (according to the proportion of freight insured), the plaintiffs claimed to be indemnified, by the underwriters upon the present policy: and the validity of this claim was the only matter in controversy, upon the trial of the cause.

For the *plaintiffs*, it was contended, that the expenses incurred during the embargo, were a direct consequence of the embargo, operating as a partial loss upon the freight; that, therefore, the sum *ought to be paid or reimbursed by the defendants, so far as the interest of the plaintiffs extended; that the expenses of the embargo might either be estimated by the jury, upon a consideration of the time, and the burden of the vessel; or from the actual disbursement (which the counsel for the defendants agreed and admitted), and that the premium, being paid for an insurance against the peril of an embargo, applied to a partial, as well as to a total, loss of the freight. In the course of the plaintiff's argument, the following books were cited: Mill. on Ins. 339; Park, 121, 124; Abb. 274–5, 282–6; 2 Marsh. 620, 628; 2 T. R. 414; 1 Val. Com. 168–170; 1 Emerig. 539; Park, 53; 1 T. R. 127, 129, 132; 4 Ibid. 208, 210, 211; 6 Ibid. 413, 419, 422, 423, 425; Park, 127; 1 Mag. 250, 254; 7 T. R. 421; Park, 78; 2 East 544; 1 Bos. & Pul. 203; Doug. 268, 586; 1 East 228; 2 Burr. 696.

For the *defendants*, it was insisted, that on this policy upon freight specifically, the expenses of seamen's wages, &c., during the embargo, were not recoverable; for the brig coming to her port of delivery in safety, had earned, and actually had received, her whole freight. Besides, it was contended, that such an allowance would be contrary to an established and uniform usage among merchants and underwriters; and it was attempted to prove by the testimony of witnesses, and the certificates of insurance brokers (admitted by consent), that such an usage existed. The attempt failed, however, on the investigation; and the verdict of the jury gave a negative to the usage. In the course of the argument for the defendants, the following books were cited: 1 T. R. 127; Park, 59; 2 Marsh. 628; 4 T. R. 210; Abb. 221–3; 2 Marsh. 570, 625–6, 628; 1 Emerig. 539; Pothier, "Charter Party," 35; Park, 116; Abb. 228–9; 2 Marsh. 467; Park, 124; Wesk. 252–3, 499, 135, 244; Beawes' L. M. 137; 4 T. R. 208; 1 Mag. 168–9, 170.

The Chief Justice delivered the unanimous opinion of the court (all the judges being present) in the charge to the jury.

Jones v. Insurance Co. of North America.

SHIPPEN, Chief Justice.—There is no direct judicial authority in the books, upon the case now before the court. The case must, therefore, be decided either upon principle, or upon usage.

The present policy is an insurance upon freight, against the peril of an embargo, as well as against the other enumerated perils. The expense for seamen's wages and provisions, claimed upon the policy, was an immediate consequence of the embargo at Bordeaux. That expense, it has been often decided, does not fall upon the underwriters of the ship, or the cargo ; but it is remarkable, that Judge BULLER (a judge of uncommon understanding and precision), when concurring in that opinion, emphatically adds, "the freight must bear it :" and if the freight must bear *it, the implica- [*248 tion is strong, that the policy upon freight, must be the appropriate instrument of indemnity.(a)

Considering the point, however, abstractedly, upon principle, it is naturally asked, why the law should admit, upon every other subject of insurance, a recovery against the underwriters, for a partial, as well as for a total, loss ; and exclude such a recovery, in the instance of freight ? Freight is exposed to a partial diminution of its value, as well as the ship, or the cargo ; and equally with those, contributes to the payment of a general average, arising from a loss, in its nature partial. The assured on freight, too, may abandon to the underwriters, in the same cases of a loss, not actually, but constructively, total, in which the abandonment is permitted to the assured upon the ship or cargo. Where, then, is the ground of discrimination, upon the present question ? Though the assured receive, nominally, the amount of the freight, from the shippers, they receive, in fact, so much less of the valued freight, than they would have received, if there had been no embargo, as is the amount of the expense which the embargo occasions. The injury is done exclusively to the freight ; and if the detention were long, it might, in some cases, amount to the whole freight. Now, every insurance is meant to be an indemnity ; but refuse to pay the assured upon freight, the extra-charge, a charge not contemplated in the ordinary course of the voyage, which falls upon freight, in consequence of an embargo (a risk insured against), and how can the insurance be called an indemnity ? In short, though the case has not hitherto been expressly decided ; and though we have not had much time for deliberation : yet, we think, that as far as the opinion of the judges of England can be ascertained, by a fair inference, from the expressions of the books ; and we are confident, by a fair application of the principle of insurance, the plaintiffs are entitled to a verdict, unless there is a settled, uniform usage of commerce to the contrary.

The existence of such a usage was strongly stated, in the opening of the defence ; and we expected to receive light and satisfaction from the evidence upon the subject ; for the usages of any trade, but, above all, the usages of trade and commerce, in giving a practical construction to policies

---

(a) The high court of errors and appeals reversed the judgment of the supreme court in this case, in 2 Binn. 547. The wages and provisions of the crew, and the other expenses incurred during the detention of a vessel by an embargo, do not constitute a charge against the freight; they should be brought into a general average. Ibid But see Kingston v G̈ard, *post,* p. 274.

of insurance, are of so high a consideration, that they are deemed to be a part of the express and written contract, whenever they are proved with sufficient certainty. Nor is a usage of trade to be scanned by the strict rules, for the allowance of a common-law custom. If it exists ; if it is known and uniform ; and if it is not, in itself, unlawful ; it ought to prevail in the decision of a commercial controversy.

But we confess, that we have been disappointed in our own general expectations; though we leave it to the jury (whose exclusive province it is) to decide upon the proof of the usage, in the present case. It appears, that *249] the question has seldom occurred *among the merchants and under-writers of Philadelphia ; and in the few instances in which it has occurred, the demand has been as often allowed, as it was rejected. Still, however, we repeat, the jury have a right to pronounce their own sense of the evidence. If they think, a commercial usage uhon the subject has been proved, in opposition to the claim of the plaintiffs, their verdict must be for the defendants. But in the absence of any commercial usage, the weight of authority and principle, seems to call for a contrary decision.

Verdict for the plaintiffs.

*Dallas*, for the plaintiffs. *Ingersoll, E. Tilghman* and *Moylan*, for the defendants.

SAME CAUSE. (a)

THE charge was delivered on Friday evening, the 17th of December, and the court immediately adjourned. On the next morning, when the jury were at the bar, ready to deliver a verdict, the defendant's counsel, for the first time, tendered exceptions to the charge of the court. The counsel for the plaintiff insisted, that the exceptions were tendered too late ; and the court kept the subject under advisement, that the parties might examine the precedents.

At a subsequent day, the *plaintiff's* counsel admitted that there was a variance in the precedents ; and that the statute of West. 2, 13 Edw. I. (which gives the bill of exceptions), is silent on the point. But he contended, that as all the books of practice declare, that the exception must be taken at the trial ; and that the bill itself must be tendered before the verdict ; the notice of the exception must be taken *instanter*, when the exceptionable matter occurs, though the form may be afterwards drafted. Bull. N. P. 315, 319 ; Tidd 312, 314, 315, 317; 1 Salk. 288 ; 2 W. Bl. 929 ; Cowp ; 494 ; 1 W. Bl. 556 ; 11 Mod. 175–6 ; 8 Ibid. 220–1 ; 2 H. Bl. 200; 2 T. R. 54 ; 3 Burr. 1692 ; 1 Bl. Com. 556–7; Lilly's Ent. 249, 250, 275 ; 1 Bos. & Pul. 32 ; Cro. Car. 341 ; Doug. 122.

The *opposite counsel*, referring to the same precedents, relied upon the form in Bull. N. P., and insisted, that a bill of exceptions to the charge, might be tendered at any time before the verdict.

BY THE COURT.—On a consideration of the authorities cited, and of our own practice, we do not think that the defendants were too late in tender-ing their exceptions. The bill. therefore, may be reduced to form, and

(a) s. c. 1 Binn. 38.

will be allowed. (*a*)    Even if we had *doubted on this point, we should have been inclined to afford an opportunity for the revision of our opinion minds, on the principal question ; however satisfied we are, in our own, that it is correct in principle and law. (*b*)

---

(*a*) Although the jury have agreed upon a verdict and sealed it up, until it has been opened and confirmed in court, it is, in fact, no verdict. 1 Binn. 38. It will be sufficient, if the substance of the exception be reduced to writing and tendered to the court, before the verdict has been delivered. The exception may afterwards be reduced to form, and the court is not bound to suspend the trial of a cause, until a bill of exceptions is drawn in form and sealed. Morris *v.* Buckley, 8 S. & R. 216 ; Stewart *v.* Huntington Bank, 11 Id. 267.

(*b*) In the case of Kingston *v.* Girard, *post*, p. 274, the court declared, that, after long and mature consideration, they were perfectly satisfied with their decision in Jones *v.* Insurance Company of North America. It was, however, subsequently reversed by the high court of errors and appeals. 2 Binn. 547.