**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CAMPIDOGLIO LLC; CARMEN LLC; SAN MARCO LLC, *Plaintiffs-Appellants/ Cross-Appellees*, | Nos. 14-35898 14-36091 |
| v. | D.C. No. 2:12-cv-00949- TSZ |
| WELLS FARGO & COMPANY, *Defendant*, | OPINION |
| and | |
| WELLS FARGO BANK, NA, *Defendant-Appellee/ Cross-Appellant*. | |

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, Senior District Judge, Presiding

Argued and Submitted June 8, 2017
Seattle, Washington

Filed September 12, 2017

Before: M. Margaret McKeown, Consuelo M. Callahan,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Callahan

## SUMMARY[*]

### Home Owners' Loan Act

The panel vacated the district court's order dismissing, as preempted by the Home Owners' Loan Act ("HOLA"), the plaintiffs/borrowers' claim that the Lenders (comprised of Wells Fargo Bank, N.A. and its predecessors) breached their contracts by using indexes other than those actually approved by their "primary regulator" to calculate the borrowers' interest rates; affirmed the district court's grant of summary judgment in Wells Fargo Bank's favor on the borrowers' claims premised on the Lenders' alleged failure to obtain approval from the "primary regulators" to substitute the "cost of savings index" as the index; affirmed the district court's denial of borrowers' Fed. R. Civ. P. 37 discovery motion; vacated without prejudice the district court's denial of Wells Fargo's motion for attorneys' fees; and remanded.

The borrowers filed their putative class action against Wells Fargo in Washington state court alleging causes of action based on the Lenders' alleged miscalculation of interest on the borrowers' loans. Wells Fargo removed the case to federal court under diversity jurisdiction, and moved to dismiss.

The panel held that the borrowers sufficiently raised their "Interest Rate Calculation" breach of contract claim before the district court, and borrowers did not waive their right to challenge the dismissal of the claim. The panel further held

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that the federal Home Owners' Loan Act ("HOLA") did not preempt the borrowers' Washington state law "Interest Rate Calculation" breach of contract claim. Specifically, the panel held that a common law breach of contract claim was not the type of law listed in paragraph (b) of 12 C.F.R. § 560.2, but it came within paragraph (c) of that regulation, and was a law that only incidentally affected the lending operations of federal savings associations; and hence, it was not preempted by HOLA.

Next, the panel addressed whether the district court erred in granting summary judgment in Wells Fargo's favor on the borrowers' "Use of Unapproved Indexes" breach of contract claim, and the other claims related to this alleged conduct by the Lenders. The panel affirmed the summary judgment because the Lenders gave notice to their primary regulators of their intent to substitute the indexes used to calculate interest on the borrowers' loans and the regulators did not object.

The panel affirmed the district court's denial of the borrowers' motion for discovery sanctions pursuant to Federal Rule of Civil Procedure 37 because the borrowers failed to show prejudice resulting from this ruling.

Finally, in light of its determination that HOLA did not preempt the borrowers' "Interest Rate Calculation" claim, the panel vacated the district court's denial of attorneys' fees without prejudice. The panel vacated without prejudice to the district court's consideration of the prevailing party's entitlement to fees after entry of a new judgment.

**COUNSEL**

Benjamin Gould (argued), Ryan McDevitt, Raymond J. Farrow, and Mark A. Griffin, Keller Rohrback L.L.P., Seattle, Washington, for Plaintiffs-Appellants/Cross-Appellees.

Robert Collings Little (argued), Robin C. Campbell, Mark T. Flewelling, and Leigh O. Curran, Anglin Flewelling Rasmussen Campbell & Trytten LLP, Pasadena, California, for Defendant-Appellee/Cross-Appellant.

**OPINION**

CALLAHAN, Circuit Judge:

Campidoglio LLC, Carmen LLC, and San Marco LLC (the Borrowers) sued Wells Fargo Bank, N.A. (Wells Fargo) based on Wells Fargo and its predecessors' (together, the Lenders) alleged miscalculation of interest on the Borrowers' loans. This case presents four issues for our review. First, we are called upon to determine whether the Home Owners' Loan Act ("HOLA") preempts the Borrowers' "Interest Rate Calculation" breach of contract claim, which arises under Washington law. Because we find that a common law breach of contract claim is not the type of law listed in paragraph (b) of 12 C.F.R. § 560.2, but comes within paragraph (c) of that regulation and is a law that only incidentally affects the lending operations of federal savings associations, we conclude that this claim is not preempted by HOLA. Second, we address whether the district court erred in granting summary judgment in Wells Fargo's favor on the Borrowers' "Use of Unapproved Indexes" breach of contract claim, and the other claims related to this alleged conduct by the

Lenders. We affirm the grant of summary judgment because the Lenders gave notice to their primary regulators of their intent to substitute the Indexes used to calculate interest on the Borrowers' loans and the regulators did not object. Third, we affirm the district court's denial of the Borrowers' motion for discovery sanctions pursuant to Federal Rule of Civil Procedure 37 because the Borrowers fail to show prejudice resulting from this ruling. Finally, in light of our determination that HOLA does not preempt the Borrowers' "Interest Rate Calculation" claim, we vacate the district court's denial of attorneys' fees without prejudice.

# I

## A

Each Borrower executed an adjustable-rate mortgage promissory note in favor of World Savings Bank (the Notes). The interest rate for all three Notes is calculated by adding the "stated margin," which is a constant value, and the "current index" (the Index), which has a fluctuating value. When the Borrowers executed the Notes, the Notes defined "Index" to mean the "weighted average of the interest rates in effect as of the last day of each calendar month on the deposit accounts of the federally insured depository institution subsidiaries . . . of Golden West Financial Corporation" (Golden West). It also provided that "[i]f an index is substituted as described in this Section . . . the alternative index will become the Index." At that time, World Savings Bank was Golden West's subsidiary, and the Index was the Golden West "cost of savings" index, or the "Golden West COSI." The Notes also provide:

> The Lender may choose an alternative to be the Index if the Index is no longer available. . . . The selection of the alternative index shall be at the Lender's sole discretion. The alternative index may be a national or regional index *or another type of index approved by the Lender's primary regulator*. The Lender will give notice to the Borrower of the alternative index.

Wachovia Corporation (Wachovia) later acquired Golden West and World Savings Bank, and World Savings Bank changed its name to Wachovia Mortgage, FSB.    On December 15, 2006, Wachovia submitted a letter to its primary regulator, the Office of Thrift Supervision (OTS), stating that Wachovia intended to change the Index from the Golden West COSI to the Wachovia COSI.[1]    The letter discusses both new and existing loans.  In January 2007, the OTS responded to Wachovia.    The response describes Wachovia's December 2006 letter as seeking "to establish an alternative adjustable-rate loan index for new mortgage loans," and states that:

> [B]ased upon the regulatory criteria and the representations made in the Notice, the OTS takes no objection to World [Savings Bank's]

---

[1] We note that while the parties' briefs and portions of the record are filed under seal, the district court's decision was not.  Moreover, neither party requested that we file our disposition under seal.  *See* Interim Circuit Rule 27-13(k).  We presumptively file dispositions publicly, *id.*, and we do so here, as we refer only to those facts contained in the district court's publicly filed decision.

use of the proposed alternative adjustable-rate loan index.

The OTS's January 2007 letter does not, however, specifically mention existing loans. The OTS and Wachovia later communicated about Wachovia's plan for substituting the Index for existing loans. In July 2007, the Borrowers were notified that because the Golden West COSI would no longer be available, the Wachovia COSI would be used as the Index going forward.

Then, in 2008, Wells Fargo acquired Wachovia, including Wachovia Mortgage. Because the Wachovia COSI would no longer be available for use as the Index, Wells Fargo sent letters to Wachovia's primary regulator, the OTS, and its own primary regulator, the Office of the Comptroller of the Currency (OCC), seeking approval to use a new Index value: the Wells Fargo COSI.[2] The OCC responded, indicating that, based on the information provided by Wells Fargo, it had no objection to Wells Fargo using the Wells Fargo COSI as the Index. In a footnote, the OCC's letter recites that the "Wachovia COSI was approved by the OTS for use by World Savings [Bank] in May 2007. Wachovia COSI replaced a similar World Savings [Bank] index the OTS had approved in 1997." The OTS similarly informed Wells Fargo that it had no objection. Wells Fargo then switched to using the Wells Fargo COSI as the Index for calculating the interest rate on various adjustable-rate mortgage loans, including the Borrowers' loans.

---

[2] Wells Fargo is a national bank, regulated by the OCC. Wachovia and World Savings Bank are federal savings associations, regulated by the OTS.

**B**

The Borrowers filed a putative class action in Washington state court in May 2012, alleging four separate claims for breach of contract, a claim for breach of the implied covenant of good faith and fair dealing, violations of the Washington Consumer Protection Act (WCPA), and unjust enrichment. The breach of contract claims are based on the Lenders' allegedly improper "Interest Rate Calculation," "Substitution of Indexes," "Transparency of Calculation," and "Use of Unapproved Indexes." Wells Fargo removed the case to the United States District Court for the Western District of Washington, and moved to dismiss the complaint for failure to state a claim upon which relief could be granted. Wells Fargo argued that HOLA preempted the Borrowers' claims. The district court granted the motion in part, finding that HOLA preempted three of the Borrowers' four claims for breach of contract, including the "Interest Rate Calculation" breach of contract claim. The surviving breach of contract claim, entitled "Use of Unapproved Indexes," alleged that the Lenders breached their contractual duty "to substitute only indexes qualifying as 'national or regional indexes' and/or approved by their primary regulator" by using the Wachovia COSI and the Wells Fargo COSI. The Borrowers' claims for violations of the WCPA, unjust enrichment, and breach of the covenant of good faith and fair dealing survived to the extent they were premised on this alleged misconduct.

Wells Fargo later moved for summary judgment on the Borrowers' remaining claims. Due to ongoing discovery disputes, the district court continued the hearing on this motion several times. The parties' discovery skirmishes culminated in the Borrowers filing a motion for sanctions pursuant to Federal Rule of Civil Procedure 37. The

Borrowers asserted that although Wells Fargo had identified approximately 6,000 documents responsive to the Borrowers' requests for production, Wells Fargo withheld production of, or redacted, 4,636 documents based on overly broad assertions of attorney-client privilege. The Borrowers argued that Wells Fargo's failure to produce these documents violated a prior court order, and sought to compel their production.

The court for the most part deferred ruling on the motion, indicating that it lacked sufficient information to determine whether Wells Fargo had properly invoked the attorney-client privilege.[3] The court ordered the Borrowers to designate up to twenty of Wells Fargo's privilege log entries that, in the Borrowers' view, identified communications not actually protected by the attorney-client privilege. Wells Fargo would then submit these communications, and the corresponding privilege log entries, to the court for in camera review. The court indicated that if Wells Fargo had properly invoked the attorney-client privilege for the designated communications, then the court would deny this portion of the Borrowers' Rule 37 motion. But, if "Wells Fargo ha[d] improperly asserted the attorney-client privilege as to a significant portion of the communications," then the court would "grant appropriate relief to [the Borrowers], potentially including in camera review of additional materials and/or directing Wells Fargo to produce all documents identified in the privilege log."

---

[3] The Borrowers' Rule 37 motion also requested that the district court find that Wells Fargo waived its assertions of the attorney-client privilege and the bank examination privilege, and deem Wells Fargo's privilege log deficient for failing to provide certain information. The court denied the request regarding the privilege assertions, and struck as moot the request regarding the privilege log.

Wells Fargo subsequently withdrew its assertion of the attorney-client privilege for some documents, but maintained that those documents were nonetheless protected by the "bank examination privilege." *See infra* note 5. Wells Fargo asserted that although it had correctly withheld documents based on privilege, on some privilege log entries it might have misstated the applicable privilege.

The district court issued two orders on the Rule 37 motion. It first found that Wells Fargo had appropriately invoked the bank examination privilege as to some documents, and that Wells Fargo was not required to produce other documents because, although not privileged, those documents were not "reasonably calculated to lead to the discovery of admissible evidence." But the court found it still lacked adequate information to determine whether the privilege was properly invoked for another group of documents. Following further supplemental briefing, the court denied the remainder of the Borrowers' Rule 37 motion because it ultimately was "satisfied that Wells Fargo ha[d] complied with its discovery obligations."

Having decided the parties' discovery dispute, the district court addressed Wells Fargo's motion for summary judgment. The court granted summary judgment in favor of Wells Fargo. It found that, as a matter of law, both Wachovia and Wells Fargo had complied with the applicable regulations, had given notice to their primary regulators of their intent to substitute the Index, and had received approval to do so.

Wells Fargo then moved for attorneys' fees based on language in the Notes which provided that "[t]he Borrower will pay back the Lender for all of the Lender's costs and expenses in the enforcement or collection of this Note or the

Security Agreement, subject to the limits imposed by applicable law." The court denied the motion, holding that the incurred attorneys' fees did not fall within this term. Wells Fargo requested reconsideration, which the court denied.

Both the Borrowers and Wells Fargo timely appealed. The Borrowers seek review of three decisions: the dismissal of their "Interest Rate Calculation" breach of contract claim on the basis of HOLA preemption, the grant of summary judgment in Wells Fargo's favor on their "Use of Unapproved Indexes" breach of contract claim and their other claims arising from this alleged conduct, and the denial of relief under Rule 37. Wells Fargo appeals the district court's decision denying its motion for attorneys' fees.

We have jurisdiction over the Borrowers' and Wells Fargo's appeals pursuant to 28 U.S.C. § 1291. We affirm in part, vacate in part, and remand.

## II

The district court found that HOLA preempted a number of the Borrowers' breach of contract claims and dismissed them pursuant to Federal Rule of Civil Procedure 12(b)(6). On appeal, the Borrowers contend that the district court erred in dismissing one claim: their "Interest Rate Calculation" claim, which alleged that the Lenders breached their contractual obligation to apply the Index the Notes said they would apply. In other words, the Borrowers assert that even if the Lenders received approval to use the Wachovia and Wells Fargo COSIs as the Index, the Lenders failed to actually use either of these COSIs as the Index and instead applied some other, unknown value as the Index. "We review

de novo the district court's grant of a motion to dismiss under Rule 12(b)(6), accepting all factual allegations in the complaint as true and construing them in the light most favorable to the nonmoving party." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012).

## A

As a preliminary matter, Wells Fargo contends that the Borrowers did not advance the theory supporting their "Interest Rate Calculation" breach of contract claim before the district court, and have waived their right to challenge the dismissal of this claim. We disagree. The thrust of the Borrowers' complaint was that the Lenders did not receive approval to use the Wells Fargo and Wachovia COSIs, that those COSIs could not properly be applied to the Borrowers' loans, and that the COSIs were calculated based only on the weighted average of interest rates paid on CD accounts, rather than the weighted average of interest rates paid on all deposit accounts. Their complaint, however, also included allegations adequately setting forth the alternative theory of liability: Wells Fargo failed to apply the Indexes that the Notes said it would. Indeed, the Borrowers' first claim for breach of contract, entitled "Interest Rate Calculation," states that the Lenders breached their contractual obligations by "charging interest rates not based on any discernible index since the fourth quarter of 2007, using indexes—the Wachovia COSI and purported Wells Fargo COSI—that did and do not reflect the weighted average of the interest rates payable on all deposit accounts, and by adjusting interest rates in a manner that does not accurately reflect the correct average rates." In opposing Wells Fargo's motion to dismiss, the Borrowers argued that Wells Fargo breached its contractual obligations by "calculating their interest rates on

the basis of indices based on CDs only rather than all deposit accounts, *and/or charging interest rates inconsistent even with the CD rates*." They also argued that "Wells Fargo ultimately used indices calculated on the basis only of certain deposit accounts, *and/or indices not ascertainably based on any set of deposit accounts*." The district court characterized the first claim for breach of contract as a claim that the Lenders "incorrectly calculated, and inflated, the interest rates starting in the fourth quarter of 2007." We find that these allegations and arguments support the conclusion that the Borrowers sufficiently "presented [and] developed" the "Interest Rate Calculation" breach of contract claim "for the trial court to rule on it." *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (quoting *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992)).

**B**

Turning to whether the district court erred in dismissing the Borrowers "Interest Rate Calculation" breach of contract claim as preempted by HOLA, we focus on the scope of HOLA's preemption. The Borrowers argue that HOLA does not apply to its claims against Wells Fargo at all because HOLA applies only to federal savings associations, whereas Wells Fargo is a national bank regulated by the OCC under the National Banking Act. *See Bank of Am. v. City of San Francisco*, 309 F.3d 551, 561–62 (9th Cir. 2002). Whether, and to what extent, HOLA applies to claims against a national bank when that bank has acquired a loan executed by a federal savings association is an open question in our court. But we need not resolve this question because we find that, even assuming that HOLA applies to the Borrowers' claims against Wells Fargo, it would not preempt the Borrowers' breach of contract claim.

HOLA is undoubtedly expansive. Enacted in 1933, it is "a product of the Great Depression of the 1930's, [and] was intended 'to provide emergency relief with respect to home mortgage indebtedness' at a time when as many as half of all home loans in the country were in default." *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 159 (1982) (citation omitted). HOLA empowered the regulatory body, which became the OTS, to authorize the creation of federal savings and loan associations, to regulate them, and, by its regulations, to preempt conflicting state law. *Id.* at 161–62. The OTS regulations have been described as "a 'radical and comprehensive response to the inadequacies of the existing state system,' and 'so pervasive as to leave no room for state regulatory control.'" *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004–05 (9th Cir. 2008) (quoting *Conference of Fed. Sav. & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1257, 1260 (9th Cir. 1979)). In *Silvas*, we held that the OTS regulation for federal savings associations occupies the field. *Id.* at 1005. Moreover, although it is generally presumed that Congress does not intend to preempt state law absent a clear manifestation of intent to the contrary, that presumption does not apply to regulations in the field of national banking. *Id.* at 1004–05.

Nonetheless, HOLA does not preempt all state laws. The relevant OTS regulations, set forth at 12 C.F.R. § 560.2, provide the framework for determining whether a state law is, in fact, preempted by HOLA. Paragraph (a) sets up a presumption that laws affecting lending are preempted. Paragraph (b) of § 560.2 provides the "types of state laws preempted by paragraph (a)" of the regulation "include, without limitation, state laws purporting to impose requirements regarding" thirteen different categories of lending operations. These categories include "[t]he terms of

credit," "[l]oan-related fees," "[e]scrow accounts," and "[d]isclosure and advertising." *Id.* § 560.2(b)(4), (5), (6), (9). Paragraph (c) of § 560.2 provides a list of state laws that "are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section." That list includes "[c]ontract and commercial law." *Id.* § 560.2(c)(1).

We follow a three-step process prescribed by the OTS for analyzing whether a state law is preempted under this regulation.

> [T]he first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

*Silvas*, 514 F.3d at 1005 (quoting OTS, Final Rule, 61 Fed. Reg. 50,951, 50,966–67 (Sept. 30, 1996)). In conducting this analysis, we are not limited to assessing whether the state law on its face comes within paragraph (b) of the regulation. Instead, we ask whether the state law, "as applied, is a type of

state law contemplated in the list under paragraph (b) . . . . If it is, the preemption analysis ends." *Id.* at 1006.

We find that Washington's common law of contracts, under which the Borrowers assert their breach of contract claim, is not the type of law listed in paragraph (b) of the regulation. To the contrary, Washington contract law, as alleged in the Borrowers' complaint, imposes no requirements on Wells Fargo regarding banking regulations. While the Borrowers' breach of contract claim undoubtedly relates to "terms of credit," 12 C.F.R. § 560.2(b)(4), it is the parties' own agreement, rather than Washington state law, that imposes any requirements on Wells Fargo regarding these terms. *See Cipollone v. Ligegett Grp., Inc.*, 505 U.S. 504, 525 (1992) (holding that an express warranty was not a "requirement . . . imposed under State law" because the obligation was imposed by the warrantor). Wells Fargo cannot be excused from an alleged failure to comply with its contractual obligations simply because those obligations relate to the subject matter contained in paragraph (b) of the regulation.

Our conclusion is consistent with *Silvas*. There, we assessed whether HOLA preempted claims brought under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, and California's Unfair Advertising Law, Cal. Bus. & Prof. Code § 17500. *Silvas*, 514 F.3d at 1006. The *Silvas* plaintiffs' section 17500 claim alleged that the defendant, a federal savings association, violated state law "by representing to its customers that its lock-in fee [was] non-refundable when, under law, it is refundable if the consumer decides to exercise his or her rescission rights under [the Truth in Lending Act, 15 U.S.C. § 1601]." *Id.* at 1003. The plaintiffs further alleged "that the false statement was made

in [the defendant's] website and its customer disclosures and thus constituted false advertising." *Id.* The plaintiffs' unfair competition claim was based on allegations that "the lock-in policy itself violated UCL § 17200 as an unlawful business act," and that the defendant's "practice of misrepresenting consumers' legal rights in advertisements and other documents [was] unfair, deceptive, and contrary to the policy of California." *Id.* We found that sections 17200 and 17500, as applied to the plaintiffs' claims, imposed requirements regarding "disclosure and advertising" as well as "loan-related fees" on a federal savings association. Because these matters came clearly within paragraph (b) of 12 C.F.R. § 560.2, we concluded that HOLA preempted the plaintiffs' claims. *Id.* at 1006.

By contrast, the Borrowers' claim against Wells Fargo seeks to impose only the state law requirement that Wells Fargo honor a contractual promise made by its predecessor-in-interest. Contract law is silent regarding terms of credit. Furthermore, it is the contract, not the law, that regulates Wells Fargo's conduct. That the promise at issue relates to the terms of credit does not bring Washington's common law of contracts within the meaning of paragraph (b).

Next, we ask "whether the law affects lending." *Silvas*, 514 F.3d at 1005. We assume, without deciding, that Washington's common law of contracts does affect lending, thus giving rise to a "presumption . . . that the law is preempted." *Id.* Applying *Silvas*, however, we find that "[t]his presumption [is] reversed" because the law at issue here—Washington's common law of contracts—fits into paragraph (c)(1), "Contract and commercial law," and is a law that "only incidentally affect[s] the lending operations of Federal savings associations . . . ." 12 C.F.R. § 560(c); *see*

*also Silvas*, 514 F.3d at 1006.  Because the law "can clearly be shown to fit within the confines of paragraph (c)," HOLA does not preempt it.  *Silvas*, 514 F.3d at 1005.

We therefore vacate the district court's order dismissing the "Interest Rate Calculation" breach of contract claim and remand for further proceedings consistent with this opinion.

## III

We next turn to the Borrowers' breach of contract claim premised on the Lenders' alleged "Use of Unapproved Indexes."  This claim alleged that the Lenders breached their contractual obligations to obtain approval from their primary regulators—the OTS or the OCC—before substituting an Index that is not a national or regional index.  Lenders obtain approval from their "primary regulators" through the procedures set forth in 12 C.F.R. § 560.35(d)(3), which applies to the OTS, and 12 C.F.R. § 34.22, which applies to the OCC.  Under § 560.35, the lender must file a notice with the OTS of its intent to use an index other than a national or regional index.  If, after 30 days, the OTS has not informed the lender that "the notice presents supervisory concerns or raises significant issues of law or policy," the index may be used.  12 C.F.R. § 560.35(d)(3).  A similar procedure applies to the OCC.  12 C.F.R. § 34.22.  The lender must give notice to the OCC, and unless the OCC notifies the lender of "supervisory concerns" or "significant issues of law or policy" within 30 days, the lender "may use" the new index. *Id.*  The Borrowers alleged that the Lenders did not comply with these procedures, and thus did not obtain valid approval to substitute the Wachovia and Wells Fargo COSIs as the Index.

The district court granted summary judgment in Wells Fargo's favor. We review de novo a district court's grant of summary judgment. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc). "[S]ummary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). In conducting this review, "we view the evidence in the light most favorable to the non-moving party," *id.*, and "[w]e may affirm summary judgment on any ground supported by the record," *Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950, 956 (9th Cir. 2009). Because we find that the undisputed facts establish, as a matter of law, that the Lenders obtained the OTS and the OCC's approval to use the Wells Fargo and Wachovia COSIs as the Index on the Borrowers' loans, we affirm.

The Borrowers' argument that, at the very least, a jury should decide whether Wachovia obtained the OTS's approval before applying the Wachovia COSI to their loans, assumes that interpreting Wachovia's December 2006 letter to the OTS, and the OTS's January 2007 response, raises questions of fact to be decided by a jury. This assumption misapprehends what constitutes a question of fact. Whether a breach occurred is, of course, a question of fact. *Frank Coluccio Constr. Co. v. King Cty.*, 136 Wash. App. 751, 762 (2007). But whether the Lenders gave notice and received approval from their primary regulators under the relevant regulations are questions of law. *See Johnson v. Allstate Ins. Co.*, 126 Wash. App. 510, 515 (2005) (questions of law include the interpretation of contracts, statutes, "and other writings"); Wash. Rev. Code § 4.44.080 (questions of law include "the construction of . . . writings"). Moreover, the material facts—that is, what the communications between the

Lenders and the primary regulators actually *say*—are undisputed. The dispute focuses instead on the *interpretation* of the words contained in those communications, and whether those words establish the requisite notice and approval under the regulations. The issue before us is thus a mixed question of law and fact; it is "[a] question[] in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the [legal] standard . . . ." *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982). "Where a case turns on a mixed question of law and fact and . . . the only disputes relate to the legal significance of undisputed facts, 'the controversy collapses into a question of law suitable to disposition on summary judgment.'" *Blue Lake Rancheria v. United States*, 653 F.3d 1112, 1115 (9th Cir. 2011) (quoting *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003)). *Accord Batdorf v. Transam. Title Ins. Co.*, 41 Wash. App. 254, 257 (1985).

Thus, we turn to resolving the legal significance of the Lenders' missives to the OCC and the OTS, and their responses. Wachovia's December 2006 letter to the OTS clearly informs the OTS that Wachovia will first introduce the Wachovia COSI for new loans, and will subsequently substitute the Wachovia COSI as the index for existing loans.[4] The letter's statement that the "specific plans for

---

[4] Wachovia's use of the words "plans to" and "will undertake" both signal Wachovia's intent to apply the Wachovia COSI as the Index for new and existing loans. Merriam-Webster defines "plan" as "to devise or project the realization of," "to have in mind," or "to have a specified intention." *Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/plan. It defines "undertake" as "to take upon oneself : set about," "to put oneself under obligation to perform, also : to accept as a charge or responsibility," and "guarantee, promise."

substitution have not been finalized" does not obfuscate Wachovia's statement of intent to use the Wachovia COSI as the Index for existing loans. Instead, this language merely indicates that Wachovia's procedures for substituting the Index, including the materials it would provide to borrowers, were not yet finalized.

Nor was Wachovia required to obtain OTS's approval of its specific plans for substituting the Index. In 1996, when the OTS adopted 12 C.F.R. § 560.35, the notice published in the Federal Register stated that the regulation was adopted "to give an association the flexibility to use alternative indices after notifying OTS." OTS, Final Rule, 61 Fed. Reg. at 50,954 (Sept. 30, 1996). It indicated that "[t]he notice should address how indices will be derived, how the association will ensure the indices' availability and verifiability, and how the indices will be disclosed to borrowers." *Id.* The Federal Register further provides, however, that "[o]nce OTS has reviewed and not objected to an institution's internal procedures for the use of alternative indices, *subsequent notices need only address how new indices are derived*. If OTS does not object within 30 days, the association may proceed with using alternative indices." *Id.* at 50,955 (emphasis added). The parties do not dispute that World Savings Bank had previously received approval from the OTS to use the Golden West COSI. Wachovia's subsequent notice to the OTS therefore needed to address only how the new Index, the Wachovia COSI, was derived. Wachovia's offer

---

*Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/undertake. Similarly, Black's Law Dictionary defines "undertake" as "to take on an obligation or task." *Black's Law Dictionary* (9th ed. 2009). These terms make clear that Wachovia expressed an intent to act on *both* proposed substitutions.

to provide the OTS with information about its plans for substitution does not signify that further approval was required before the substitution was implemented. Nor does Wachovia's indication that it would provide these plans to the OTS render its notice of intent to use the Wachovia COSI as the Index on existing loans incomplete.

We conclude that, as a matter of law, Wachovia's December 2006 letter constitutes "notice" to the OTS, under 12 C.F.R. § 560.35, that Wachovia intended to substitute the Wachovia COSI for the Golden West COSI as the Index for existing loans.

The remaining inquiry is whether the OTS approved this proposed Index substitution. The undisputed facts establish that OTS did not object to Wachovia's use of the Wachovia COSI as the Index on existing loans. Accordingly, we find that, as a matter of law, Wachovia received approval from its primary regulator. The regulations provide that OTS is deemed to have approved the proposed substitution thirty days after the savings association gives notice "unless, within that 30-day period, OTS has notified the association that the notice presents supervisory concerns or raises significant issues of law or policy." 12 C.F.R. § 560.35(d)(3). The parties argue at length about the import of conversations between Wachovia's representatives and OTS officials and the meaning of the OTS's January 2007 response to Wachovia. But nothing in the record indicates, and no party contends, that the OTS raised any "supervisory concerns" or "significant issues of law or policy" to Wachovia's December 2006 notice. We therefore need not resolve whether the OTS affirmatively approved the proposed substitution; the undisputed facts show that the OTS did not object to it.

Accordingly, Wachovia could "use" the Wachovia COSI as the Index. *See* 12 C.F.R. § 560.35(d)(3).

Finally, the Borrowers challenge the validity of Wells Fargo applying the Wells Fargo COSI as the Index on their loans. They assert that Wells Fargo obtained the OCC's approval to use this COSI as the Index by falsely representing to the OCC that Wachovia had received the OTS's approval to use the Wachovia COSI. Our determination that Wachovia validly obtained the OTS's approval to use the Wachovia COSI forecloses this argument.

We therefore affirm the district court's grant of summary judgment in Wells Fargo's favor on the Borrowers' "Use of Unapproved Indexes" claim.

## IV

Rule 37 provides parties with a mechanism for seeking sanctions against another party for "failure to comply with a court order." Fed. R. Civ. P. 37(b). Subsection (2)(A) addresses sanctions "for not obeying a discovery order." We have recognized that this rule "provides a wide range of sanctions for a party's failure to comply with court discovery orders." *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980). We review orders on discovery sanctions under Rule 37(b) for an abuse of discretion, *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007), and we "will not reverse absent a definite and firm conviction that the district court made a clear error of judgment," *Allen v. Exxon Corp. (In re The Exxon Valdez)*, 102 F.3d 429, 432 (9th Cir. 1996) (citation omitted). Indeed, whether to issue sanctions, or to deny the discovery sought pursuant to such a motion, is

within the district court's "wide discretion in controlling discovery." *Jeff D. v. Otter*, 643 F.3d 278, 289 (9th Cir. 2011) (citation omitted). We will not overturn its decision absent a showing of prejudice. *Bollow v. Fed. Reserve Bank of S.F.*, 650 F.2d 1093, 1102 (9th Cir. 1981) (affirming denial of Rule 37 motion where moving party made no showing of prejudice resulting from the denial); *see also Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (district court's "decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant" (citation omitted)).

Here, the Borrowers filed their Rule 37 motion because Wells Fargo, asserting the attorney-client privilege, refused to produce documents in response to a court order. The Borrowers argued that Wells Fargo's attorney-client privilege designations were overbroad, and thus the documents were improperly withheld from production. As "sanctions," the Borrowers' motion requested that the court (1) order Wells Fargo to comply with the court's prior discovery order and produce all withheld documents; (2) stay supplemental briefing on Wells Fargo's pending motion for summary judgment; and (3) order Wells Fargo to pay the Borrowers' attorneys' fees incurred in bringing the Rule 37 motion. After reviewing a sample of twenty documents selected by the Borrowers as demonstrative of Wells Fargo's impermissible privilege designations, the district court denied the motion, finding that Wells Fargo had complied with its discovery obligations.

The Borrowers contend that the district court abused its discretion by denying their Rule 37 motion and finding that Wells Fargo's attorney-client privilege designations were not

overbroad when, of the twenty documents the Borrowers designated for the district court's review, only five were subject to the attorney-client privilege. The Borrowers further contend that the district court erred in finding that Wells Fargo was not required to produce documents subject to the bank examiner's privilege. Finally, the Borrowers argue that Wells Fargo's incorrect privilege designations for fifteen out of twenty documents indicates that Wells Fargo also incorrectly designated as privileged a large number of documents within the 4,636 documents ultimately at issue. The Borrowers assert that they were prejudiced because some of the documents designated as privileged were internal Wachovia documents, which, if produced, might "shed light on Wachovia's behavior in 2006 and 2007, and strengthen the inference that [the Lenders] deliberately circumvented regulatory scrutiny."

Perhaps the district court erred in finding that the OCC waived the bank examination privilege for only thirteen documents, and thus erroneously concluded that seven of the twenty designated documents remained subject to the bank examination privilege.[5] Moreover, if Wells Fargo incorrectly designated documents within the twenty-document sample as privileged, it is not irrational to infer that Wells Fargo also incorrectly designated as privileged other documents within the larger group of 4,636 documents withheld from production. But because the language of Wachovia's

---

[5] While we have not addressed the bank examiner's privilege, also called the bank examination privilege, several of our sister circuits have. *See, e.g.*, *In re Bankers Trust Co.*, 61 F.3d 465, 471 (6th Cir. 1995). We need not resolve the contours of this privilege in our own circuit because assuming, without deciding, that the district court erroneously determined that the documents at issue were subject to this privilege, the Borrowers are not entitled to any relief.

December 2006 letter establishes, as a matter of law, that Wachovia notified the OTS that it would substitute the Wachovia COSI as the Index for existing loans, the suggested "inference" does nothing to aid the Borrowers. Whatever Wachovia's internal communications might show, they would not, and could not, change the December 2006 letter's language. Thus, even assuming the district court erred in defining the scope of the bank examination privilege, *and* assuming that the seven documents at issue were not actually subject to the bank examination privilege as asserted by the OCC in this case, the Borrowers have failed to demonstrate that the district court's refusal to compel production of the additional documents prejudiced them. We thus affirm the district court's denial of the Borrowers' Rule 37 motion.[6]

## V

Finally, we consider Wells Fargo's cross-appeal challenging the district court's decision denying its motion for attorneys' fees. "We review an award of attorneys' fees for abuse of discretion." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016). "The district court's underlying factual determinations are reviewed for clear error and its legal analysis relevant to the fee determination is reviewed de novo." *Shapiro ex rel. Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 374 F.3d 857, 861 (9th Cir. 2004).

---

[6] We decide this issue on the ground that there was no prejudice to the Borrowers' "Use of Unapproved Indexes" claim. We do not decide whether the Borrowers are entitled to these documents in connection with their now-revived "Interest Rate Calculation" breach of contract claim.

Wells Fargo moved for attorneys' fees under a provision of the Notes that states, "[t]he Borrower will pay back the Lender for all of the Lender's costs and expenses in the enforcement or collection of this Note," including attorneys' fees. Applying Washington law, the district court determined that Wells Fargo's defense of this action did not constitute "the enforcement or collection" of the Notes. Although we question this interpretation, we need not reach the merits of Wells Fargo's appeal. Rather, because we determine that the district court erred in dismissing the Borrowers' breach of contract claim as preempted by HOLA, and thus vacate the district court's entry of final judgment in Wells Fargo's favor, we likewise vacate its order on attorneys' fees. This order is vacated without prejudice to the district court's consideration of the prevailing party's entitlement to fees after entry of a new judgment.

## VI

We vacate the district court's order dismissing, as preempted by HOLA, the Borrowers' claim that the Lenders breached their contracts by using Indexes other than those actually approved by their "primary regulator " to calculate the Borrowers' interest rates (the "Interest Rate Calculation" breach of contract claim). We affirm the district court's grant of summary judgment in Wells Fargo's favor on the Borrowers' claims premised on the Lenders' alleged failure to obtain approval from their "primary regulators" to substitute the COSIs as the Index (the "Use of Unapproved Indexes" breach of contract claim). We further affirm the district court's denial of the Borrowers' Rule 37 discovery motion. Finally, we vacate without prejudice the district court's order denying Wells Fargo's motion for attorneys' fees.

Each side shall bear its own costs on appeal.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**