NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NOV 14 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CASCADIA WILDLANDS; et al., | No. 17-35508 |
| Plaintiffs-Appellants, | D.C. No. 6:16-cv-00177-MC |
| v. | |
| UNITED STATES DEPARTMENT OF AGRICULTURE, a federal department; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Oregon
Michael J. McShane, District Judge, Presiding

Argued and Submitted July 11, 2018
Portland, Oregon

Before: WARDLAW and OWENS, Circuit Judges, and LEFKOW,** District
Judge.

Cascadia Wildlands, Center for Biological Diversity, WildEarth Guardians,

Predator Defense, and Project Coyote (collectively Cascadia) appeal the district

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Joan Lefkow, United States District Judge for the
Northern District of Illinois, sitting by designation.

court's partial grant of summary judgment in favor of the U.S. Department of Agriculture, the Department's Animal and Plant Health Inspection Services-Wildlife Services (Wildlife Services), and David Williams, and its denial of Cascadia's motion for summary judgment. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

1. The district court correctly concluded that Wildlife Services' decision to assist the State of Oregon in its removal of gray wolves was not a "major federal action" under the National Environmental Policy Act (NEPA). "Under NEPA, federal agencies are required to prepare either an [Environmental Assessment (EA)] or [Environmental Impact Statement (EIS)] for major Federal actions significantly affecting the quality of the human environment." *Alaska Ctr. for the Env't v. U.S. Forest Serv.*, 189 F.3d 851, 853 (9th Cir. 1999) (citing 42 U.S.C. § 4332(C)). "There are no clear standards for defining the point at which federal participation transforms a state or local project into [a] major federal action. The matter is simply one of degree." *Almond Hill Sch. v. U.S. Dep't of Agric.*, 768 F.2d 1030, 1039 (9th Cir. 1985) (citation omitted); *see generally* 40 C.F.R. § 1508.18. In general, we make this determination by considering: (1) the degree to which the given action is funded by the federal agency, and (2) the extent of the federal agency's involvement and control in the action. *See, e.g.*, *Ka Makani 'O Kohala Ohana Inc. v. Water Supply*, 295 F.3d 955, 960 (9th Cir. 2002).

2

"'Marginal' federal action will not render otherwise local action federal." *Almond Hill Sch.*, 768 F.2d at 1039. Neither Wildlife Services' financial contribution to the Oregon Wolf Conservation and Management Plan (Oregon Wolf Plan or the Plan) nor its control over the Plan's operation, alone or in combination, are sufficient to render its involvement a "major federal action."[1]

First, Wildlife Services contributed only a marginal level of federal funding to the Oregon Wolf Plan. Pursuant to the Intergovernmental Agreement between Wildlife Services and the Oregon Department of Fish and Wildlife (ODFW), ODFW has reimbursed Wildlife Services for its costs incurred from wolf removal actions under the Plan, including the salaries and in-state travel for Wildlife Services' employees. In 2012 and 2013, Wildlife Services' unreimbursed expenses amounted to only about eight percent of the Plan's total costs.[2] We

---

[1] We are not persuaded by Cascadia's argument that Wildlife Services' participation is a "major federal action" because Wildlife Services would not have gone through the expense of preparing NEPA-required analyses, as well as consulting with U.S. Fish and Wildlife Service, unless it believed it was required to do so under NEPA. As Cascadia notes, Wildlife Services prepared the NEPA analyses in exchange for settlement of a separate lawsuit. That Wildlife Services may have concluded that taking these measures was worth the expense of avoiding litigation, independent of any legal requirement, does not affect our analysis.

[2] Cascadia argues that Wildlife Services' participation results in a cost savings to ODFW, which should be treated as additional "federal funding" in our analysis. However, Cascadia does not quantify this potential cost savings, and moreover, we decline to address this argument as Cascadia failed to raise it before the district court. *See Baccei v. United States*, 632 F.3d 1140, 1149 (9th Cir. 2011) ("Absent

3

generally have been unwilling to impose the NEPA requirements when federal funding falls below ten percent of a state project's total costs. *See, e.g., Rattlesnake Coal. v. U.S. EPA*, 509 F.3d 1095, 1101–02 (9th Cir. 2007) (concluding that federal funding accounting for six percent of the estimated budget "does not federalize" the state project); *Ka Makani*, 295 F.3d at 960 (concluding that federal funding constituting "less than two percent of the estimated total project cost . . . . alone could not transform the entire [state project] into a 'major federal action'").

Second, Wildlife Services lacks "actual power to control" the Oregon Wolf Plan. *Ka Makani*, 295 F.3d at 961 (citation omitted); *see also Alaska v. Andrus*, 591 F.2d 537, 540 (9th Cir. 1979) ("NEPA mandates that federal agencies file impact statements when they propose to take a leading role in activity affecting the environment."). The Plan is a state-run program covered by state administrative rules and led by ODFW. *See Ka Makani*, 295 F.3d at 961 (concluding the federal "involvement was not sufficient to constitute 'major federal action'" because "the final decision-making power remained at all times" with the state agency). ODFW has sole discretion to determine when a wolf should be killed under its rules, and where and when to remove problem wolves. Notably, Oregon would continue to

---

exceptional circumstances, we generally will not consider arguments raised for the first time on appeal, although we have discretion to do so.").

4

kill gray wolves if Wildlife Services were not involved, which suggests that Wildlife Services' involvement does not control the Plan's outcomes.

Under this state regulatory framework, Wildlife Services exercises only marginal discretion as to whether to accept or reject ODFW's request to remove a specific problem wolf. But this choice is limited, as Wildlife Services must remove the wolf only under conditions set by ODFW and the Plan. Wildlife Services determines the method it will use for the removal, but must consult with ODFW to make this determination, and must select one of the methods permitted by ODFW and the Plan.[3] Wildlife Services also lacks "regulatory authority or latitude to implement other approaches, nor can it require alternative actions of ODFW."

---

[3] Cascadia characterizes Wildlife Services' actions as the "[d]evelopment of program plans that seek to adopt strategies, methods, and techniques as the means of dealing with particular animal . . . risks that may arise in the future," 7 C.F.R. § 372.5(b)(1)(i), which would "normally requir[e] environmental assessments" under NEPA, *id*. § 372.5(b). But Cascadia waived this argument by failing to raise it before the district court. *Baccei*, 632 F.3d at 1149. Moreover, this characterization is not persuasive because here Oregon and ODFW, not Wildlife Services, developed the Plan and the available wolf removal methods.

Cascadia also compares Wildlife Services' discretion here to the discretion that Wildlife Services exercised in Washington's wolf management program, as discussed in *Cascadia Wildlands v. Woodruff*, 151 F. Supp. 3d 1153 (W.D. Wash. 2015). But the district court in *Woodruff* discussed Wildlife Services' "considerable discretion" only in relation to the plaintiffs' standing, and did not address whether there was a "major federal action." *Id*. at 1160–62. And importantly, unlike Washington's wolf management program, *id*. at 1161, the Oregon Wolf Plan's terms are mandatory and bind Wildlife Services.

5

2.     Because the district court correctly concluded that Wildlife Services'

participation in the Oregon Wolf Plan is not a "major federal action," NEPA does

not apply. *Sierra Club v. Penfold*, 857 F.2d 1307, 1313 (9th Cir. 1988) ("NEPA

compliance is required only where there is 'major Federal action' which

significantly affects the environment.") (citing 42 U.S.C. § 4332(C)).  Thus,

Wildlife Services was not required to comply with NEPA.  We therefore need not

reach the question whether Wildlife Services failed to take a "hard look" in its EA

or issued an adequate statement of reasons justifying its decision to not prepare an

EIS. *See Campidoglio LLC v. Wells Fargo & Co.*, 870 F.3d 963, 973 (9th Cir.

2017) ("[W]e may affirm summary judgment on any ground supported by the

record.") (citation omitted).

**AFFIRMED**.