NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

NOV 26 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MICKEY FOWLER; LEISA MAURER, and a class of similarly situated individuals,

Plaintiffs-Appellants,

v.

TRACY GUERIN, Director of the Washington State Department of Retirement Systems,

Defendant-Appellee.

No. 23-35414

D.C. No. 3:15-cv-05367-BHS

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Submitted November 22, 2024[**]
Seattle, Washington

Before: GOULD, LEE, and H.A. THOMAS, Circuit Judges.

A certified class of Washington public school teachers ("Teachers")

participating in the Teachers' Retirement System ("TRS") managed by the

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

Director of the Washington State Department of Retirement Systems ("DRS") appeals the district court's grant of summary judgment. We have jurisdiction under 28 U.S.C. § 1291.

We review the district court's grant of summary judgment *de novo*, and we may affirm summary judgment on any ground supported by the record. *Campidoglio LLC v. Wells Fargo & Co.*, 870 F.3d 963, 973 (9th Cir. 2017). We also review *de novo* whether the district court complied with our mandate. *United States v. Perez*, 475 F.3d 1110, 1112 (9th Cir. 2007). We affirm the district court in part and reverse and remand in part.

1. In 1996, the Teachers transferred their retirement funds from TRS Plan 2 to Plan 3 mid-quarter. Because the DRS calculates Plan 2 interest payments at the end of the quarter, the DRS did not credit the Teachers' accounts for the interest earned for the part of the quarter before their funds were transferred to Plan 3. We held in a prior appeal "that the Teachers state a takings claim for daily interest withheld by [the] DRS." *Fowler v. Guerin*, 899 F.3d 1112, 1119 (9th Cir. 2018) (*Fowler I*). We then specifically "remand[ed] for the district court to reconsider class certification and, if necessary, to permit further discovery before deciding if the class shall be given the requested injunctive relief." *Id.* at 1120–21.

2. On remand from *Fowler I*, the district court certified the class, and the DRS provided account data needed to calculate amounts of accrued, but

2

uncredited, interest in the Teachers' accounts. In 2021, however, the district court allowed the DRS to amend her answer to add the affirmative defense that the Teachers' takings claim was barred by the statute of limitations. Although the district court held that the Teachers "have established a pecuniary loss and a complete *per se* takings claim, as a matter of law," the district court granted summary judgment for the DRS on the statute of limitations defense and dismissed the Teachers' claim.

3. The district court must follow our mandate, and the rule of mandate doctrine provides:

> When a case has been once decided by this court on appeal, and remanded to the [district court], whatever was before this court, and disposed of by its decree, is considered as finally settled. The [district court] is bound by the decree as the law of the case, and must carry it into execution according to the mandate. That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it further than to settle so much as has been remanded . . . But the [district court] may consider and decide any matters left open by the mandate of this court.

*United States v. Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007) (alteration in original) (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255–56 (1895)). Our mandate serves as a jurisdictional limit on the district court on remand, and "[w]e have repeatedly held . . . that a district court is limited by this court's remand in situations where the scope of the remand is clear." *Id.* at 982 (citations omitted).

4. The scope of our mandate in *Fowler I* is clear. We specifically

3

remanded the case only for reconsideration of class certification and for determination of whether the Teachers should receive prospective injunctive relief, which meant additional issues were "not open for review." *See Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 967 (9th Cir. 2005). The district court explicitly acknowledged that we "resolved the alternate bases for summary judgment 'given the many years this case has been held up in the courts,'" *see Fowler I*, 899 F.3d at 1118, which "expresses an interest in prompt resolution of this matter," and that our "decision [in *Fowler I*] clearly concludes [the Teachers] state a *per se* takings claim."

5. Given the plain language of the mandate limiting the district court to two issues on remand and the district court's own recognition that the mandate was clear, the mandate foreclosed "by necessary implication" the DRS's "entirely new [legal] theory" of statute of limitations. *See In re Beverly Hills Bancorp*, 752 F.2d 1334, 1337 (9th Cir. 1984). The district court violated our mandate and exceeded its jurisdictional limit by allowing the DRS to amend her answer on remand to raise the statute of limitations defense.

6. The DRS alternatively contends that zero pecuniary loss provides an alternative basis to affirm summary judgment. We disagree. "[T]he Fifth Amendment only protects against a taking without just compensation," which is "measured by the owner's pecuniary loss." *Brown v. Legal Found. of Wash.*, 538

4

U.S. 216, 240 (2003). If there is zero pecuniary loss, there is no Takings Clause violation, *id.* at 240, and pecuniary loss is calculated by "deducting transaction and administrative costs and bank fees" from the interest earned. *Id.* at 238 n.10.

7.    The DRS contends that if just compensation is determined by calculating "net loss," then the Teachers' pecuniary loss is offset by the Transfer Payments received by the Teachers when their accounts were transferred into TRS Plan 3. But because *Brown* explicitly held that for takings claims, just compensation "is measured by the owner's pecuniary loss," we reject the DRS's proposed "net loss" calculation. *Id.* at 240.[1]

8.    It is undisputed that the DRS did not pay the Teachers daily interest. *See, e.g.*, Wash. Admin. Code §§ 415-02-150(5), (7) (2018); *Fowler I*, 899 F.3d at 1115 (finding that the Teachers' withheld interest was being used "to pay benefits to other members"). And there are no "transaction and administrative costs [or] bank fees" here to offset the Teachers' earned interest because the DRS is not responsible for the cost of administering the TRS. *See Brown*, 538 U.S. at 238

---

[1] In support of her "net loss" theory, the DRS contends that the district court erred in rejecting evidence on the legislative history of the Transfer Payments. To reverse an evidentiary ruling, we must conclude that the district court abused its discretion and that the error was prejudicial. *Wagner v. Cnty. of Maricopa*, 747 F.3d 1048, 1052 (9th Cir. 2013). Because the DRS's proffered evidence does not affect the calculation of pecuniary loss, *see Brown*, 538 U.S. at 238 n.10, the DRS suffered no prejudice from this evidentiary ruling. *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008).

n.10, 237–39; Wash. Rev. Code § 41.50.110 (state employers are required to reimburse the Department of Retirement Systems "its proportional share of the entire expense of the administration of the retirement system"). Based on the foregoing, we affirm the district court's holding that the Teachers "have established a pecuniary loss and a complete *per se* takings claim, as a matter of law."

9. As in *Fowler I*, we remand to the district court to specifically address the remaining issue of prospective injunctive relief. *See* 899 F.3d at 1120–21. Because the district court has already held that the Teachers have proven a takings claim for daily interest, the only remaining issue for the district court to resolve is whether to approve the Teachers' proposed formula to correct the Teachers' accounts.[2] If approved, the district court should then order the DRS to correct the Teachers' accounts.

**AFFIRMED in part; REVERSED in part and REMANDED**

---

[2] In *Fowler I*, we stated that prospective injunctive relief "will likely involve applying a computerized formula to [the] DRS['s] electronic records to determine the amount of interest that should be moved to class members' . . . [P]lan 3 accounts." 899 F.3d at 1120 (some alterations in original).