**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICKEY FOWLER; LEISA MAURER, and a class of similarly situated individuals,<br><br>*Plaintiffs-Appellants*,<br><br>v.<br><br>TRACY GUERIN, Director of the Washington State Department of Retirement Systems,<br>*Defendant-Appellee*. | No. 16-35052<br><br>D.C. No. 3:15-cv-05367-BHS<br><br>OPINION |

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted May 10, 2018
Seattle, Washington

Filed August 16, 2018

Before:  Ronald M. Gould and Sandra S. Ikuta, Circuit
Judges, and John R. Tunheim,[*] Chief District Judge.

Opinion by Judge Gould

---

[*] The Honorable John R. Tunheim, Chief United States District
Judge for the District of Minnesota, sitting by designation.

# SUMMARY[**]

## Class Action / Constitutional Law / Ripeness

The panel reversed the district court's denial of a stipulated motion to certify a class and dismissal, as prudentially unripe, of an action brought by Washington public school teachers seeking the return of interest allegedly skimmed from their retirement accounts.

Plaintiffs brought this class action seeking an order that the Director of the Washington State Department of Retirement Systems return interest that was allegedly skimmed from their state-managed retirement accounts. Specifically, plaintiffs alleged a takings claim in their suit in federal court that the Director violated the Fifth and Fourteenth Amendments by withholding some of the daily interest earned on their accounts.

The panel held that the district court erred in dismissing the plaintiffs' takings claim as prudentially unripe. The panel held that the Director's withholding of the interest accrued on the plaintiffs' accounts constituted a *per se* taking as to which *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)'s prudential ripeness test did not apply. The panel also held that the plaintiffs' taking claim was *per se* because the Director's withholding of interest earned on funds in interest-bearing accounts was a direct appropriation of private property.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel considered the Director's alternative grounds for summary judgment that were not reached by the district court, and rejected them. First, the panel held that the plaintiffs stated a takings claim for daily interest withheld by the Director. The panel clarified that the core property right recognized in *Schneider v. California Department of Corrections*, 151 F.3d 1194 (9th Cir. 1988), covered interest earned daily, even if payable less frequently. Second, the panel held that the takings claim was not barred by issue preclusion or by the *Rooker-Feldman* doctrine. The panel held that no state-court judgment resolved the precise issue presented in this case, and the plaintiffs did not complain of any error by the state court or seek relief from the state court's judgments. Finally, the panel held that the plaintiffs' takings claim was not foreclosed by the Eleventh Amendment.

The panel also held that the district court erred in denying the motion for class certification on the ground that the plaintiff's claim for "an indivisible injunction" for all members was really one for individualized monetary damages. The panel held that the plaintiffs' claim could be certified for class treatment under Fed. R. Civ. P. 23(b)(2) because the relief of correcting the entire records system for the class members accounts was in the nature of injunctive relief.

The panel remanded for the district court to reconsider class certification, and if necessary, to permit further discovery before deciding if the class shall be given the requested injunctive relief.

**COUNSEL**

Stephen K. Festor (argued), Stephen K. Strong, David F. Stobaugh, and Alexander F. Strong, Bendich Stobaugh & Strong P.C., Seattle, Washington, for Plaintiffs-Appellants.

Jeffrey A.O. Freimund (argued) and Michael E. Tardif, Freimund Jackson & Tardif PLLC, Olympia, Washington, for Defendant-Appellee.

---

**OPINION**

GOULD, Circuit Judge:

Washington public school teachers Mickey Fowler and Leisa Maurer bring this class action to order the Director of the Washington State Department of Retirement Systems ("DRS") to return interest that was allegedly skimmed from their state-managed retirement accounts. The district court denied the stipulated motion to certify a class and then dismissed the action as prudentially unripe. We conclude that both of those decisions were in error.

**I**

Washington public school teachers participate in the Teachers' Retirement System, a public retirement system managed by DRS. *See* Wash. Rev. Code §§ 41.32.010, .020, .025. The Teachers' Retirement System comprises three retirement plans named "Plan 1," "Plan 2," and "Plan 3."

This case concerns savings that were held in Plan 2. Plan 2 contributions are invested in a comingled trust fund by the Washington State Investment Board. DRS does not handle deposits, but rather tracks teachers' contributions and credits

their individual accounts for accumulated interest. *See id.* § 41.32.010(1)(b). Interest is credited at "such rate as the director [of DRS] may determine." *Id.* § 41.32.010(38). Since 1977, DRS has credited Plan 2 accounts with a 5.5% annual rate compounded quarterly. DRS determines the amount of interest to credit to Plan 2 accounts based on the accounts' balances at the end of the prior quarter. Therefore, DRS does not credit accounts with the interest earned on the funds in the account during that quarter. In addition, if a Plan 2 account has a zero balance at the end of a quarter, the account is not credited with interest earned on any funds in that account during either that quarter or the prior quarter.

Fowler and Maurer (collectively, "Teachers") were originally members of Plan 2, but in 1996 they transferred their holdings into newly created Plan 3 accounts. Because the Teachers transferred their Plan 2 holdings mid-quarter, and thus had a zero balance in their Plan 2 accounts at the end of the quarter in which they transferred their holdings, DRS did not credit their accounts for the interest earned during that quarter or the prior quarter. Instead, DRS kept the interest and used it to pay benefits to other members.

In 2005, another Washington State employee filed a class action suit in state court challenging DRS's interest rate calculations. *See Probst v. State Dep't of Ret. Sys.*, 271 P.3d 966, 968 (Wash. Ct. App. 2012). When this employee settled his claim, the Teachers became the class plaintiffs. *Id.*

The Teachers' state-court complaint alleged that DRS deprived them of earned daily interest on their Plan 2 accounts by not providing interest through the date on which their funds were transferred to Plan 3 accounts. *Id.* The Washington Superior Court rejected the Teachers' arguments, but on appeal the Washington Court of Appeals

reversed in part.    Without reaching the Teachers'
constitutional arguments, that court held that DRS's interest
rate policy was arbitrary and capricious under state law
because there was no record showing the agency gave the
issue "due consideration." *Id.* at 971–73.  The Superior
Court subsequently remanded the case to DRS to initiate a
new rulemaking.

DRS began the rulemaking process in July 2013.  The
Teachers appealed the Superior Court's remand to the
agency, however, and the Washington Court of Appeals
affirmed the Superior Court's order in an unpublished
decision.  *Probst v. Dep't of Ret. Sys.*, No. 45128-0-II, 2014
WL 7462567 (Wash. Ct. App. Dec. 30, 2014).

The Teachers then filed this suit in federal court.  The
complaint omits the Teachers' state-law claims and alleges
solely that the Director of DRS ("Director") violated the
Fifth and Fourteenth Amendments by withholding some of
the daily interest earned on their Plan 2 accounts.

The parties filed a stipulated motion to certify a class of
all active and retired members of the Teachers' Retirement
System who had transferred from Plan 2 to Plan 3 before
January 20, 2002.  The district court denied the stipulated
motion without prejudice, concluding that the parties'
explanation was not detailed enough for the court to fulfill
its independent responsibility to ensure that the requirements
of Rule 23 were met.

The district court then granted the Director's motion for
summary judgment, concluding that this case was
prudentially unripe pending the conclusion of DRS's new
interest calculation rulemaking.

The Teachers timely appealed.  Less than a month before oral argument in this case, DRS's new rule took effect and retroactively affirmed its prior interest calculation method. *See* Wash. Admin. Code § 415-02-150.

## II

The first question presented is whether the Teachers' takings claim is prudentially unripe.[1]  We review a dismissal for lack of ripeness *de novo*.  *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1130 (9th Cir. 2013).  Because the dismissal was entered on summary judgment, we view the facts in the light most favorable to the Teachers.  *See Millennium Labs., Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1129 (9th Cir. 2016).

The district court held that the Teachers' claim was unripe under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985).  *Williamson County* sets forth two prudential hurdles for takings claims.  First, a takings claim is unripe until "the government entity charged with implementing the regulations has reached a final decision regarding the application of the [challenged] regulations to the property at issue."  *Id.* at 186.  Second, the plaintiff must have sought

---

[1] Unlike constitutional ripeness, prudential ripeness is a disfavored judge-made doctrine that "is in some tension with [the Supreme Court's] recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2347 (2014) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014)).  The Court has not yet had occasion to "resolve the continuing vitality of the prudential ripeness doctrine." *Id.*

and been denied "compensation through the procedures the State has provided."  *Id.* at 194.

By its terms, *Williamson County* applies only to regulatory, not *per se*, takings.  In *Williamson County*, a land developer obtained Planning Commission approval of a plat for residential development.  473 U.S. at 177.  When the county changed its zoning ordinances, the Planning Commission required the developer to change the plat.  *Id.* at 179.  Instead, the developer filed suit, arguing that the Planning Commission had taken its property without just compensation by disapproving its original development plan.  *Id.* at 182.  The Supreme Court granted certiorari on "the question whether Federal, State, and Local governments must pay money damages to a landowner whose property allegedly has been 'taken' temporarily by the application of government regulations."  *Id.* at 185.  But the Court ultimately determined that this issue of regulatory taking was not yet ripe, because the developer had not sought variances from the county's ordinances, and therefore had "not yet obtained a final decision regarding how it will be allowed to develop its property."  *Id.* at 190.  Nor had the developer used state procedures for obtaining just compensation.  *Id.* at 194.

Although *Williamson County* acknowledged that a regulation that "goes too far" may constitute a taking, *id.* at 186 (quoting *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)), this line of jurisprudence is not applicable when the government directly takes a person's property.  The Court explained the distinction in *Horne v. Department of Agriculture*, 135 S. Ct. 2419, 2427 (2015).  According to the Court, before *Pennsylvania Coal*, "the Takings Clause was understood to provide protection only against a direct appropriation of property—personal or real."  *Id.*

"*Pennsylvania Coal* expanded the protection of the Takings Clause, holding that compensation was also required for a 'regulatory taking'—a restriction on the use of property that went 'too far.'" *Id.* (quoting *Pa. Coal*, 260 U.S. at 415). However, "a physical *appropriation* of property gave rise to a *per se* taking, without regard to other factors." *Id.* A *per se* taking triggers a "categorical duty to compensate the former owner" under the Takings Clause. *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 233 (2003) (quoting *United States v. Pewee Coal Co.*, 341 U.S. 114, 115 (1951)).

Here, the Teachers bring a *per se* taking claim because DRS's withholding of interest earned on funds in interest-bearing accounts is a direct appropriation of private property. The Supreme Court addressed this issue in a pair of cases concerning states' Interest on Lawyers' Trust Account ("IOLTA") programs. First, in *Phillips v. Washington Legal Foundation*, the Court held that "the interest income generated by funds held in IOLTA accounts is the 'private property' of the owner of the principal." 524 U.S. 156, 172 (1998). Then in *Brown v. Legal Foundation of Washington*, the Court held that the law requiring interest on those funds to be transferred to a third party is evaluated not as a regulatory taking, but as a *per se* taking. 538 U.S. at 235.

As a result, DRS's withholding of the interest accrued on the Teachers' accounts constitutes a *per se* taking to which *Williamson County*'s prudential ripeness test does not apply. The district court erred in dismissing the Teachers' takings claim as prudentially unripe.

## III

Given the many years that this case has been held up in the courts, we proceed to consider the Director's alternative

grounds for summary judgment that were not reached by the district court because those grounds may provide a basis to affirm the district court. *See Kohler v. Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1263 (9th Cir. 2015). We review the grant of summary judgment *de novo*. *Id.* We will uphold the summary judgment if, viewing the evidence in the light most favorable to the non-moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)).

The Director contends that the Teachers fail to state a claim because there has been no taking of property, and that even if the Teachers do state a claim, that claim is barred by issue preclusion, the *Rooker-Feldman* doctrine, and the Eleventh Amendment. We address each argument in turn.

## A

The Director argues that the Teachers' takings claim fails on its merits because there has been no taking of private property here. In the state-court litigation, the Washington Court of Appeals held that the state statutory scheme "do[es] not require the DRS to pay daily interest." *Probst*, 271 P.3d at 971. The Director asserts that there can be no federal takings claim without this state-law property right.

We rejected a similar argument in *Schneider v. California Department of Corrections*, 151 F.3d 1194 (9th Cir. 1998). There we observed that "constitutionally protected property rights can—and often do—exist *despite* statutes . . . that appear to deny their existence." *Id.* at 1199. Citing the Supreme Court's opinion in *Phillips*, we noted that "a State may not sidestep the Takings Clause by disavowing traditional property interests long recognized under state law." *Id.* at 1200 (quoting 524 U.S. at 167). We

then held that there is "a 'core' notion of constitutionally protected property into which state regulation simply may not intrude without prompting Takings Clause scrutiny." *Id.* This "core" is "defined by reference to traditional 'background principles' of property law." *Id.* at 1201. In that case, we concluded that interest income earned on an interest-bearing account falls within this class of fundamental property rights. *Id.*

We now clarify that the core property right recognized in *Schneider* covers interest earned daily, even if payable less frequently. The rule that interest accrues *de die in diem*— "from day to day"—has an impressive common law pedigree, *see, e.g.*, *Wilson v. Harman*, 2 Ves. Sen. 672, 672, 27 Eng. Rep. 189, 189, and has been widely adopted by American courts, *see, e.g.*, *Mann v. Anderson*, 32 S.E. 870, 871 (Ga. 1899); *Owens v. Graetzel*, 126 A. 224, 227 (Md. 1924); *Clapp v. Astor*, 2 Edw. Ch. 379, 384 (N.Y. Ch. 1834); *In re Flickwir's Estate*, 20 A. 518 (Penn. 1890). Indeed, in the state-court proceedings, DRS did not dispute that "at common law, interest was deemed to accrue daily, regardless of when it was payable." *Probst*, 271 P.3d at 970 n.6 (citing 32 *Halsbury's Laws of England* § 127, p. 78 (4th ed. 2005)). Because the right to daily interest is deeply ingrained in our common law tradition, this property interest is protected by the Takings Clause regardless of whether a state legislature purports to authorize a state officer to abrogate the common law. *See Schneider*, 151 F.3d at 1201.

We hold that the Teachers state a takings claim for daily interest withheld by DRS.

**B**

Next, the Director contends that the Teachers' claim is barred by two related doctrines: issue preclusion and *Rooker-Feldman*.

Federal courts must give the same preclusive effect to state-court judgments as would be given in the courts of that state. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). In Washington, the issue preclusion doctrine bars the relitigation of issues that were actually litigated and necessarily decided in a prior proceeding involving the same parties. *Sprague v. Spokane Valley Fire Dep't*, 409 P.3d 160, 183 (Wash. 2018). Washington courts look to four factors in determining whether issue preclusion applies, including whether the issues decided are "identical." *Id.*

In a related vein, and pursuant to the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction to hear direct or "de facto" appeals from the judgments of state courts. *See Noel v. Hall*, 341 F.3d 1148, 1156 (9th Cir. 2003). "It is a forbidden de facto appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Id.* at 1163. This doctrine occupies "narrow ground," *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), however, and "does not preclude a plaintiff from bringing an 'independent claim' that, though similar or even identical to issues aired in state court, was not the subject of a previous judgment by the state court," *Cooper v. Ramos*, 704 F.3d 772, 778 (9th Cir. 2012) (quoting *Skinner v. Switzer*, 562 U.S. 521, 532 (2011)).

According to the Director, the Washington Court of Appeals has already adjudicated two issues on which the

Teachers' takings claim depends: whether the Teachers are entitled to daily interest, and whether their takings claim is premature.  The Director also argues that the Teachers now seek both a direct and de facto appeal of the state court's decisions on these issues.

We disagree.  The Washington Court of Appeals' first decision expressly declined to reach the merits of the Teachers' constitutional takings claim.  *Probst*, 271 P.3d at 967 n.1.  Its discussion of the Teachers' entitlement to daily interest turned solely on an issue of Washington statutory law, not federal constitutional law.  *See id.* at 970–71.  And the state court's subsequent decision did not decide the issues before us either.   It found premature only the Teachers' speculation that the forthcoming DRS rulemaking would effect a taking, not their argument here that DRS effected a taking by retaining some of their earned interest years ago.  *See Probst*, 2014 WL 7462567, at \*2, \*6.

No state-court judgment resolved the precise issues presented in this case, and the Teachers do not complain of any error by the state court or seek relief from the state court's judgments.  The Teachers' takings claim is not barred by issue preclusion or by the *Rooker-Feldman* doctrine.

## C

Finally, the Director contends that the Teachers' takings claim is foreclosed by the Eleventh Amendment.  In the Director's view, the Teachers seek monetary damages, which would mean that the State is the real party in interest and that a money award would impermissibly be paid from the State's treasury.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 & n.11 (1984).

But as the Director previously has conceded, and as the Teachers' complaint plainly shows, the Teachers actually seek an injunction ordering the Director to return savings taken from them. Rather than requiring payment of funds from the State's treasury, *see id.*, this relief "will likely involve applying a computerized formula to DRS electronic records to determine the amount of interest that should be moved to the class members' . . . [P]lan 3 accounts." Prospective injunctive relief of this sort is readily distinguishable from a compensatory damages award. *See Taylor v. Westly*, 402 F.3d 924, 935–36 (9th Cir. 2005).

Further, Washington's sovereign immunity shields the State's general fund, not investment funds held for the benefit of its employees. *See id.* at 932. "Money that the state holds in custody for the benefit of private individuals is not the state's money, any more than towed cars are the state's cars." *Id.* The Eleventh Amendment does not stand in the way of a citizen suing a state official in federal court to return money skimmed from a state-managed account. *See id.* at 935.

In sum, none of the Director's alternative arguments justifies the district court's grant of summary judgment in this case.

## IV

Before mistakenly granting summary judgment, the district court denied the parties' stipulated motion to certify a class. We review the class certification decision for abuse of discretion. *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1090 (9th Cir. 2010). We have often said that "an error of law *is* an abuse of discretion." *Id.* at 1091.

The district court denied the stipulated motion based on its concern that a Rule 23(b)(2) class would be inappropriate here. As the district court pointed out, Rule 23(b)(2) "does not authorize the class certification of monetary claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). But as explained above, the Teachers do not bring a claim requiring individualized determinations of eligibility for damages. The Teachers instead seek an injunction ordering the Director to apply a single formula to DRS's electronic records to correct the amount of interest credited to class members' accounts. In the language of *Dukes*, DRS's policy of denying daily interest "is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). The district court erred in denying the motion for class certification on the ground that the Teachers' claim for "an indivisible injunction benefitting all its members at once" was really one for individualized monetary damages. *Id.* at 362. The claim can be certified for class treatment under Rule 23(b)(2) because the relief of correcting the entire records system for the class member accounts is in the nature of injunctive relief.

## V

For the foregoing reasons, we reverse the decision that this case is not ripe, and we remand for the district court to reconsider class certification and, if necessary, to permit further discovery before deciding if the class shall be given the requested injunctive relief.

**REVERSED AND REMANDED.**