# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JEFFREY PROBST and a class of similarly situated individuals, | No. 59097-2-II |
| Plaintiffs, | |
| MICKEY FOWLER and LEISA MAURER, and a class of TRS Plan 3 members, | |
| Respondents/Cross-Appellants, | |
| v. | |
| DEPARTMENT OF RETIREMENT SYSTEMS, | UNPUBLISHED OPINION |
| Appellant/Cross-Respondent. | |

MAXA, J. – This case involves a consolidated lawsuit prosecuted by Mickey Fowler and

Leisa Maurer, as representatives of a class of individuals with retirement plans in the Teacher

Retirement System (TRS) (collectively, Fowler), against the Department of Retirement Systems

(DRS). DRS appeals the trial court's order denying its summary judgment motion based on a

lack of jurisdiction. Fowler cross-appeals the trial court's order denying their summary

judgment motion on their takings claim.

Fowler challenges DRS's method of calculating interest on TRS plans. When this

lawsuit was filed, DRS compounded interest on retirement contributions quarterly, using the

quarter's ending balance to calculate interest. If a participant withdrew their retirement account

or transferred between retirement plans during a quarter, the ending balance at the end of the quarter for the original plan was zero and DRS paid no interest during that quarter. In this over 20-year-old action, Fowler alleges that DRS's method of calculating interest unlawfully withheld daily interest from members who transferred from TRS Plan 2 to TRS Plan 3 before January 2002.

This case has a long history. In 2005, Jeffrey Probst, the original party to the lawsuit, filed a class action lawsuit against DRS regarding DRS's calculation of interest. The class action complaint requested declaratory and monetary relief. Probst later filed a separate petition for review under the Administrative Procedure Act (APA), chapter 34.05 RCW, challenging DRS's denial of claims for interest accrued on retirement accounts. The trial court consolidated the class action lawsuit and the petition for review.

A supplemental complaint filed in 2008 added Fowler as a class representative. The supplemental complaint alleged that DRS's actions were contrary to the prohibition on the taking of property in the Washington Constitution and again sought declaratory and monetary relief.

In 2010, the trial court dismissed Fowler's petition for review under the APA. This court reversed, holding that DRS's rulemaking regarding retirement account interest accrual was arbitrary and capricious. Fowler also argued that DRS's failure to pay daily interest was an unconstitutional taking, but the court declined to address that argument. In 2013, the trial court subsequently remanded the case to DRS for further rulemaking. This court affirmed the remand to DRS. Fowler again argued that DRS's failure to pay daily interest was an unconstitutional taking, but the court declined to address that argument as premature.

DRS did not engage in further rulemaking on remand. So in 2015, Fowler filed a lawsuit in federal court against the director of DRS, alleging that not crediting daily interest violated the

2

takings clause of the Fifth Amendment to the United States Constitution. The federal district court initially dismissed the case on ripeness grounds. In 2018, the Ninth Circuit Court of Appeals reversed, holding that Fowler had established an unconstitutional taking of daily interest from the teachers' retirement accounts. On remand, in 2021 the district court ruled that Fowler had proven a federal takings claim and granted summary judgment in favor of Fowler on that issue. But in 2023, the district court dismissed the case on statute of limitations grounds. Fowler appealed to the Ninth Circuit.

While the statute of limitations issue was pending in federal district court, Fowler filed a summary judgment motion in state court, seeking damages for the unlawful taking of daily interest. They argued that res judicata and collateral estoppel based on the federal court rulings prevented DRS from arguing that an unconstitutional taking did not occur. DRS filed its own summary judgment motion, arguing that the trial court lost jurisdiction when this court affirmed the trial court's 2013 remand back to DRS, Fowler never pleaded a Fifth Amendment takings claim in state court, and the district court's dismissal of Fowler's federal claim on statute of limitations grounds precluded Fowler from asserting a takings claim in state court. The trial court denied both parties' motions for summary judgment without prejudice. The court ruled that it lacked jurisdiction over the merits of the lawsuit because the APA claim had been remanded to DRS and that jurisdiction of the takings claim remained in federal court. But the court declined DRS's request to dismiss the lawsuit with prejudice.

A commissioner of this court granted discretionary review of the trial court's order. But in November 2024, the Ninth Circuit reversed the district court again. The court held that its prior mandate precluded the district court from addressing the statute of limitations and confirmed that Fowler had proved that DRS unlawfully withheld daily interest in violation of the

takings clause. The court remanded the case to the district court to formulate a remedy for prospective injunctive relief.

Following the Ninth Circuit's ruling, both Fowler and DRS raised procedural arguments in supplemental briefing to this court. Fowler argued that there is no controlling question of law for this court to resolve under RAP 2.3(b)(4) and this court should dismiss the grant of discretionary review. DRS argued that the priority of action rule prevents the trial court from addressing the merits of Fowler's lawsuit until the federal litigation concludes. We reject both arguments and address the merits of the appeal.

On the merits, DRS argues that the trial court correctly ruled that it lacked jurisdiction after it remanded the case to DRS, but erred when it did not dismiss the case under CR 12(h)(3). In their cross-appeal, Fowler argues that the trial court erred in (1) ruling that it did not have jurisdiction over the class action lawsuit, (2) denying their summary judgment motion on their takings claim because collateral estoppel precludes DRS from arguing that there was no takings clause violation, and (3) not striking DRS's actuarial expert testimony.

We hold that the trial court did not err in ruling that it lacked jurisdiction over the APA claim but erred in ruling that it lacked jurisdiction over Fowler's takings claim. We decline to address Fowler's summary judgment motion on DRS's takings liability because the trial court did not address this issue on the merits. For the same reason, we decline to address Fowler's evidentiary arguments.

Accordingly, we affirm the trial court's ruling that it lacked jurisdiction over the APA claim, reverse the trial court's ruling that it lacked jurisdiction over Fowler's takings claim, and remand for further proceedings consistent with this opinion.

FACTS

In January 2005, Probst filed a class action lawsuit against DRS. Probst alleged that DRS unlawfully withheld accrued interest from retirement accounts in the Public Employee Retirement System (PERS) and TRS when members would withdraw their retirement account or transfer between retirement plans. The complaint requested declaratory and equitable relief, including an "order requiring DRS to calculate interest from the date of receipt of each member's contribution to the date of a member's withdrawal and/or transfer." Clerk's Papers (CP) at 5. The complaint also requested monetary relief. The complaint did not expressly allege a violation of the takings clauses of either the United States Constitution or the Washington Constitution.

In October 2005, Probst filed a petition for review under the APA of DRS's denial of claims for interest accrued on retirement accounts. Among other claims, Probst alleged that DRS's decision to not pay accrued interest up to the date members withdrew their funds from their retirement accounts was arbitrary and capricious. The trial court subsequently consolidated the two cases.

In 2007, a portion of the class – those people who transferred from TRS Plan 2 to Plan 3 after January 20, 2002, including Probst – settled their claims with DRS.[1]

In 2008, a supplemental complaint was filed adding Fowler as class representatives. Fowler was excluded from the class subject to the settlement agreement. The new class consisted of TRS beneficiaries who transferred their retirement plans from TRS Plan 2 to TRS Plan 3 before January 20, 2002.

---

[1] DRS settled with certain members of the class because DRS determined that those members' claims were not time barred by the statute of limitations.

The supplemental complaint alleged that when the class members transferred their retirement funds from TRS Plan 2 to TRS Plan 3, DRS unlawfully withheld interest on their accounts because DRS did not calculate interest on a daily basis. The complaint alleged that "DRS had a duty under the common law and retirement statutes to provide daily interest on members' accounts," and that "DRS's assertion that it had no duty . . . is contrary to the Washington Constitution, including . . . its prohibition on taking of property." CP at 9-10. The complaint again requested declaratory and equitable relief, including an "order requiring DRS to calculate interest from the date of receipt of each member's contribution to the date of a member's withdrawal and/or transfer," as well as monetary relief. CP at 10. An amended supplemental complaint made the same allegations.

In 2009, the parties filed cross-motions for summary judgment on various issues. Fowler argued that former RCW 41.50.033(1) (2007)[2] should not be interpreted as allowing DRS's interest calculation method because that method would constitute an unconstitutional taking. Fowler stated:

> Here, under the common law "*interest earned belongs to the owner of the funds that generated the interest*" and "*interest earned by deposit of money . . . is an increment that accrues to that money and its owners*." [*Phillips v. Washington Legal Foundation*, 524 U.S. 156, 165-66 & n.5, 118 S. Ct. 1925, 141 L. Ed. 2d 174 (1998)] (IOLTA case) (emphasis added). The "rule that 'interest follows principal' has been established under English common law since the mid-1700's." *Id.* at 165. "[A]ny interest that *does* accrue" on deposited funds is therefore "a property right incident to the ownership of the underlying principal." *Id.* at 168 (italics by Court). Accordingly, *the Takings Clause of the Fifth Amendment prohibits the government from appropriating accrued interest from the owners of the underlying funds. Id.* at 165-71; *accord*, *Brown v. Legal Foundation of Washington*, 538 U.S. 216, 233-35 (2002); *Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1201 (9th Cir.

---

[2] RCW 41.50.033(1) states, "The director shall determine when interest, if provided by a plan, shall be credited to accounts in the . . . the teachers' retirement system . . . . The amounts to be credited and the methods of doing so shall be at the director's discretion, except that if interest is credited, it shall be done at least quarterly."

1998) ("interest income . . . is sufficiently fundamental that States may not appropriate it without implicating the Takings Clause").

CP at 817 (emphasis in original).

In response, DRS argued that its interest calculation method "does not effect an unconstitutional taking of property." CP at 1904. DRS distinguished the *Phillips* case and emphasized that it was exercising its authority to determine the benefits of TRS members, not taking property from them.

The trial court addressed these motions in 2010. The court ruled on summary judgment that Fowler's claims were not time barred. However, the court ruled that DRS had authority to calculate interest for people transferring retirement plans, and that the relevant statutes did not require daily interest. Therefore, the court affirmed DRS's administrative order under the APA. The court dismissed Fowler's complaint with prejudice. The court did not address the non-APA claims, including any takings claim, asserted in the class action supplemental complaint.

*First State Appeal: Probst I*

Fowler appealed the trial court's dismissal of their claims. *Probst v. Dep't of Ret. Sys.*, 167 Wn. App. 180, 182-83, 271 P.3d 966 (2012) (*Probst I*). In their opening brief, Fowler made the exact same argument about the Fifth Amendment takings clause as in its 2009 trial court brief quoted above. Fowler again argued that that former RCW 41.50.033(1) should not be interpreted as allowing DRS's interest calculation method because that method would constitute an unconstitutional taking under the Fifth Amendment. Fowler concluded, "The 2007 statute should be interpreted to be constitutional. Under the trial court's interpretation, it is not." CP at 1333 (citation omitted).

This court noted that relevant statutes permitting transfers from PERS Plan 2 to PERS Plan 3 delegated to DRS the authority to determine "amounts to be credited," which included

determining how interest is earned. *Id.* at 186-89 (quoting RCW 41.50.033(1)). The court held that former RCW 41.50.033 abrogated the common law rule that interest accrues daily and did not "require the DRS to pay daily interest on balances transferred from Plan 2 to Plan 3." *Id.* at 191.

However, the court held that DRS acted arbitrarily and capriciously in its decision to use a quarterly interest calculation. *Id.* The court stated that "DRS consistently recognized the advantages that would be realized by moving to a more frequent interest calculation but rejected such a move without identifying any reasons for doing so." *Id.* at 193-94. Accordingly, the court reversed the trial court's dismissal and remanded for further proceedings. *Id.* at 194.

The court acknowledged that Fowler had argued that "DRS's failure to pay daily interest effected an unconstitutional taking." *Id.* at 183. But the court specifically declined to address Fowler's constitutional takings argument because it decided the case based on arbitrary and capricious agency action. *Id.* at 183 n.1.

*Second State Appeal*: *Probst II*

Following the decision in *Probst I*, the trial court in June 2013 remanded DRS's administrative decision to DRS for further proceedings consistent with *Probst I*. But the trial court did not address the class action complaint.

Fowler appealed the remand order. *Probst v. Dep't of Ret. Sys.*, No. 45128-0-II, slip op. at 1 (Wash. Ct. App. Dec. 13, 2014) (unpublished) (*Probst II*), https://www.courts.wa.gov/opinions/pdf/D2%2045128-0-II%20Unpublished%20Opinion.pdf. They argued that the trial court erred in remanding the case to DRS instead of ordering DRS to pay Fowler's interest based on the common law daily interest rule, that any new rule DRS

promulgated would improperly apply retroactively, and that any application of a new rule that does not use daily interest would be an unconstitutional taking. *Id.* at 1-2.

In December 2014, this court held that the trial court properly remanded the case to DRS. *Id.* at 10. The court reasoned that the holding in *Probst I* determined that DRS had authority to determine how interest is calculated for retirement plan transferees. *Id.* at 8. Because the APA governed the Fowlers' initial appeal in *Probst I*, the court determined that remand was appropriate. *Id.* at 10. The court also rejected Fowler's argument that the class's claim for money damages exempted them from review under the APA. *Id.* Accordingly, the court affirmed the trial court's remand of the case to DRS. *Id.* at 13.

Regarding Fowler's takings argument, the court stated as follows:

> The Fowlers also argue that if the DRS is allowed under RCW 41.50.033 to make and apply a new rule that does not use the common law daily interest rule to calculate interest, the potential failure to pay interest based on that rule will result in an unconstitutional taking. Pursuant to the takings clause of the Fifth Amendment and applied to the states through the Fourteenth Amendment, the government cannot take private property for public use without just compensation. U.S. Const., amend. V. This argument is also speculative because the DRS has not made or applied a new rule resulting in an unconstitutional taking; therefore, this argument is premature.

*Id.* at 11.

After this court's decision in *Probst II*, it appears that DRS did not adopt a new rule until 2018. *See* former WAC 415-02-150 (2018). The rule confirmed DRS's prior position that interest was not calculated on a daily basis. Former WAC 415-02-150 (2018).

*Federal Court Litigation*

In 2015, Fowler filed a class action lawsuit against the director of DRS in federal district court. Suing under 42 U.S.C. § 1983, Fowler alleged that DRS failed to provide daily interest to individuals who transferred from TRS Plan 2 and Plan 3 between 1996 and January 20, 2002.

Fowler's only legal claim was that DRS violated the takings clause of the Fifth Amendment as applied to the states through the Fourteenth Amendment by failing to pay the requisite interest on transferred retirement accounts. Fowler requested a declaration that DRS had violated the Fifth Amendment takings clause. Fowler also requested the following relief:

> The Court should order Defendant to: (1) calculate the interest wrongly withheld from the Plaintiffs from the dates the Plaintiffs made the contributions to the dates they were withdrawn, (2) re-calculate the separate "transfer payment" paid into the TRS Plan 3 individual accounts to include the interest wrongly withheld, (3) calculate the earnings or interest on the funds that were not transferred from the dates the Plaintiffs transferred to TRS Plan 3, and from the dates of the transfer incentive payment, respectively, to the date the money is finally deposited into their Plan 3 accounts, and (4) transfer the funds calculated as remaining in the TRS Plan 2/3 account (and the remaining transfer payments) to the Plaintiffs' TRS Plan 3 accounts.

CP at 904-05. Fowler did not request monetary relief or damages.[3]

The district court initially dismissed the Fowlers' claims as prudentially unripe. *Fowler v. Frost*, No. C15-5367, 2015 WL 9303486, at *3-4 (W.D. Wash. Dec. 22, 2015) (court order). The Ninth Circuit Court of Appeals reversed the district court. *Fowler v. Guerin*, 899 F.3d 1112 (9th Cir. 2018) (*Fowler I*). The court held that Fowler asserted a takings clause claim for a per se taking because the "withholding of interest earned on funds in interest-bearing accounts is a direct appropriation of private property" to which prudential ripeness does not apply. *Id.* at 1117.

---

[3] Under the Eleventh Amendment to the United States Constitution, states are immune from suits by citizens for money damages in federal court. *Fed. Maritime Com'n v. S.C. State Ports Auth.*, 535 U.S. 743, 752-53, 122 S. Ct. 1864, 152 L. Ed. 2d 962 (2002). But under the *Ex Parte Young* doctrine, citizens can sue state officials in their personal capacities in federal court for prospective injunctive relief. 209 U.S. 123, 167-68, 28 S. Ct. 441, 52 L. Ed. 714 (1908). Accordingly, in federal court Fowler specifically sued the director of DRS for prospective injunctive relief due to DRS's allegedly unconstitutional withholding of interest.

The Ninth Circuit also rejected DRS's position that no taking occurred because state law did not create a property right in daily interest. *Id.* at 1118. The court stated that "income earned on an interest bearing account falls within [the] class of fundamental property rights." *Id.* That core property right "covers interest earned daily, even if payable less frequently." *Id.* The court concluded that "[b]ecause the right to daily interest is deeply ingrained in our common law tradition, this property interest is protected by the Takings Clause regardless of whether a state legislature purports to authorize a state officer to abrogate the common law." *Id.* at 1118-19. Therefore, the court held that the plaintiffs "state a takings claim for daily interest withheld by DRS." *Id.* at 1119.

The Ninth Circuit also addressed Eleventh Amendment immunity. *Id.* at 1119-20. The court emphasized that Fowler did not seek monetary damages, but instead sought "an injunction ordering [DRS] to return savings taken from them." *Id.* at 1120. The court stated, "[p]rospective injunctive relief of this sort is readily distinguishable from a compensatory damages award." *Id.* The court concluded, "Washington's sovereign immunity shields the State's general fund, not investment funds held for the benefit of its employees. . . . The Eleventh Amendment does not stand in the way of a citizen suing a state official in federal court to return money skimmed from a state-managed account." *Id.*

Accordingly, the Ninth Circuit reversed the district court. *Id.* at 1121. The court's remand order specifically ordered the district court to "reconsider class certification and, if necessary, to permit further discovery before deciding if the class shall be given the requested injunctive relief." *Id.* at 1120-21. The court described the appropriate prospective injunctive relief as a formula to move interest from state-held employee retirement funds to the teacher's accounts. *Id.* at 1120.

In January 2021, the district court allowed DRS to amend its answer to include an affirmative defense that the statute of limitations barred Fowler's claim. *Fowler v. Guerin*, No. C15-5367, 2021 WL 228900, at *4-6 (W.D. Wash. Jan. 22, 2021) (court order).

In July 2021, the district court granted summary judgment in favor of Fowler on the takings claim, ruling that Fowler had established a per se takings claim as a matter of law. *Fowler v. Guerin*, No. C15-5367, 2021 WL 3129626, at *2-3 (W.D. Wash. July 23, 2021) (court order). As part of its analysis, the court rejected DRS's argument that the plaintiffs experienced no monetary loss because certain "transfer payments" made to induce members to switch from TRS Plan 2 to Plan 3 were greater than any lost interest. *Id.*

However, the district court reserved ruling on DRS's statute of limitations defense pending a response from the Washington Supreme Court on a certified question regarding equitable tolling of the statute of limitations. *Id.* at *3-8. The court certified the question regarding equitable tolling to the Washington Supreme Court. *Fowler v. Guerin*, No. C15-5367, 2021 WL 4972737, at *3 (W.D. Wash. Aug. 5, 2021) (court order).

In 2022, our Supreme Court answered the certified question, holding that equitable tolling in a civil lawsuit requires some sort of bad faith on the part of the defendant that "interfered with the plaintiff's timely filing." *Fowler v. Guerin*, 200 Wn.2d 110, 125, 515 P.3d 502 (2022).

In the meantime, in July 2022 DRS implemented a new rule stating that interest accrues daily on Plan 1 and Plan 2 retirement accounts. WAC 415-02-150(3). The new rule entirely repealed the previous rule.

After our Supreme Court answered the certified question, both parties moved for summary judgment in the district court. *See Fowler v. Guerin*, No. 3:15-cv-05367-BHS, 2023

12

WL 3568054, at *1 (W.D. Wash. May 19, 2023) (court order).  DRS argued that Fowler's claim was time barred.  *Id.*  Fowler argued that the statute of limitations did not apply, equitable tolling applied if the statute of limitations did apply, and that the court already had found that a per se taking had occurred.  *Id.*

In May 2023, the district court held that Fowler's claim was time barred by the statute of limitations and that equitable tolling did not apply.  *Id.* at *5.  The court held that DRS did not engage in bad faith or deception that would have prevented Fowler from timely filing their federal complaint.  *Id.* at *5-7.  The court granted DRS's motion for summary judgment and dismissed Fowler's complaint with prejudice.  *Id.* at *7.

Fowler appealed the district court's dismissal to the Ninth Circuit.  *Fowler v. Guerin*, No. 23-35414, 2024 WL 4891016 (mem.) (9th Cir. 2024).

*Back to State Court*

Meanwhile, after the Ninth Circuit's decision in *Fowler I*, Fowler in 2019 filed a motion for summary judgment in state court.  It appears that Fowler attempted to raise an argument that collateral estoppel prevented DRS from contesting that a taking had occurred, entitling Fowler to relief in state court.  The trial court denied the summary judgment motion without prejudice because there was no final judgment in federal court that could provide preclusive effect.  The court stated that once there was a final judgment in district court, another motion could be filed.

In May 2023, as the federal district court was deciding the statute of limitations issue, Fowler again moved for summary judgment in state court.  And in July, Fowler filed a motion for partial summary judgment as to DRS's liability.  It does not appear that the trial court ruled on these motions.

In September, DRS filed a motion for summary judgment based on lack of jurisdiction and res judicata. DRS argued that the trial court lost jurisdiction in 2013 when it remanded the case to DRS for further rulemaking and that the court could not have jurisdiction over a takings clause claim that Fowler never alleged in his complaint. DRS also argued that the federal district court's dismissal with prejudice on statute of limitations grounds had res judicata effect that precluded Fowler's state court claim.

In October, Fowler filed another summary judgment motion regarding liability issues. Fowler argued that (1) DRS violated the takings clause by failing to credit daily interest, (2) collateral estoppel precluded DRS from contesting its liability under the takings clause as found by the federal courts, and (3) the statute of limitations ruling in federal court was not binding in state court.

Fowler also filed a motion to exclude the testimony of DRS's actuaries. DRS had filed declarations of state actuary Matthew Smith and another actuary, Scott Miller, attaching the declarations they had filed in federal court. Fowler argued that because actuaries predict future events and no data exists about how much withheld interest would have accrued if DRS had not taken it from Fowler, Smith and Miller could not make actuarial assumptions based on data that did not exist. Fowler also argued that because the statute authorizing transfer payments is unambiguous, there was no need for expert testimony as to the value because it was post-enactment legislative history.

*Trial Court Ruling*

In November 2023, the trial court held a hearing on the parties' motions for summary judgment. The court concluded, "This court does not have jurisdiction to rule on the merits

14

issues presented by the parties' summary judgment motions." CP at 1818. As a result, the court

denied both parties' motions for summary judgment without prejudice.

In its oral ruling, the court stated,

> This court concludes that as affirmed by the Court of Appeals in December 2014, this court's June 2013 remand order placed jurisdiction over the merits in the state case with the DRS at the administrative level.
>
> In 2015, plaintiffs chose to file a 42 U.S.C. Section 1983 claim in federal district court, alleging the DRS had violated the takings clause of the Fifth Amendment. Through this action plaintiffs elected to pursue their remedy for their constitutional takings clause claim in the federal forum. . . .
>
> Plaintiffs by their decision took their takings claim to federal court, and this court concludes that jurisdiction over that claim remains there in federal court while the federal case is pending.
>
> In sum, jurisdiction over the merits of the state action was transferred to the administrative level when this case was remanded in 2013 to the DRS for further proceedings, and plaintiffs by choosing to commence litigation in federal court put jurisdiction over their constitutional takings claim in the federal court where it remains while that litigation is pending. Consequently, at this time, this court does not have jurisdiction over the merits in this matter, including the three merits issues raised by plaintiffs and the merits issue raised by defendant.

Rep. of Proc. (RP) at 42-43. However, the court declined to dismiss the case for lack of

jurisdiction. The court incorporated its oral ruling into its written order. The court did not reach

Fowler's motion to exclude the testimony of DRS's actuaries.

The trial court certified its order under RAP 2.3(b)(4), stating that its ruling involved a

controlling question of law and that immediate appellate review may materially advance the

ultimate termination of the litigation.

DRS appealed the trial court's order regarding the parties' cross-motions for summary

judgment. Fowler cross-appealed the trial court's denial of partial summary judgment on

liability and its evidentiary motion.

In April 2024, a commissioner of this court granted discretionary review of the entirety of trial court's order. The commissioner's order did not limit the scope of this court's review.

*Events Since Filing Current Appeal*

In November 2024, the Ninth Circuit affirmed in part and reversed in part the federal district court's grant of summary judgment to DRS based on the statute of limitations. *Fowler v. Guerin*, No. 23-35414, 2024 WL 4891016 (9th Cir. 2024) (mem.) (*Fowler II*). The court held that the district court violated the "rule of mandate" doctrine by permitting DRS to amend its answer to add a statute of limitations affirmative defense. *Id.* at *1. The court stated that it "specifically remanded the case only for reconsideration of class certification and for determination of whether the Teachers should receive prospective injunctive relief, which meant additional issues were 'not open for review.' " *Id.* at *2 (quoting *Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 967 (9th Cir. 2005)). The court held that its mandate in *Fowler I* foreclosed any new legal theories. *Fowler II*, 2024 WL 4891016, at *2. Accordingly, the court reversed the grant of summary judgment in favor of DRS based on the statute of limitations. *Id.* at *3.

The Ninth Circuit also rejected DRS's argument that there was no net loss with respect to Fowler's takings claim. *See id.* at *2. Specifically, the court held because DRS is not responsible for the cost of administering TRS,[4] there were no fees or administrative costs to offset. *Id.* Accordingly, the court affirmed the district court's holding "that the Teachers 'have established a pecuniary loss and a complete *per se* takings claim, as a matter of law.' " *Id.* (quoting *Fowler*, 2021 WL 3129626, at *3).

---

[4] RCW 41.50.110 requires individual employers – not DRS – to pay for the fees and costs of individual retirement plans.

16

The Ninth Circuit ordered a limited remand to the district court:

> As in *Fowler I*, we remand to the district court to specifically address the remaining issue of prospective injunctive relief. *See* 899 F.3d at 1120-21. Because the district court has already held that the Teachers have proven a takings claim for daily interest, the only remaining issue for the district court to resolve is whether to approve the Teachers' proposed formula to correct the Teachers' accounts. If approved, the district court should then order the DRS to correct the Teachers' accounts.

*Fowler II*, 2024 WL 4891016, at *3 (footnote omitted).

A commissioner of this court ordered the parties to submit supplemental briefing on the effect of the Ninth Circuit's ruling in *Fowler II*.

## ANALYSIS

A. DISMISSAL OF DISCRETIONARY REVIEW

Fowler argues in their supplemental brief that this court should dismiss discretionary review because there no longer are controlling issues of law warranting discretionary review under RAP 2.3(b)(4) after the Ninth Circuit's opinion in *Fowler II*. We disagree.

RAP 2.3(b)(4) permits this court to accept discretionary review when,

> The superior court has certified, or that all parties to the litigation have stipulated, that the order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review of the order may materially advance the ultimate termination of the litigation.

Here, the controlling question of law is whether the trial court had subject matter jurisdiction over Fowler's claims. Without subject matter jurisdiction over the merits of the lawsuit, the trial court has no ability to act. *ZDI Gaming, Inc. v. Wash. State Gambling Com'n*, 173 Wn.2d 608, 616, 268 P.3d 929 (2012). Therefore, the trial court's jurisdiction controls the issues that remain in the case.

In addition, determining whether the trial court correctly decided it had no jurisdiction over Fowler's claims will "materially advance the ultimate termination of the litigation." RAP

17

2.3(b)(4). If we decide that the trial court had jurisdiction over the merits of Fowler's claim, then the trial court can proceed to decide the case.

Fowler argues that there is no controlling issue of law for discretionary review because the Ninth Circuit decided Fowler's takings clause claim in his favor. But this argument conflates the merits of the motions the parties brought before the trial court with the issue of law in the order that warrants discretionary review before this court. Under RAP 2.3(b)(4), we look to the trial court's order to determine if there is a controlling issue of law that meets the relevant criteria. Here, the trial court's order states that it lacked jurisdiction to decide the merits of the parties' summary judgment motions.

Accordingly, we decline to dismiss the grant of discretionary of review.

## B.     PRIORITY OF ACTION RULE

DRS argues in its supplemental brief that under the priority of action rule, the federal courts have exclusive jurisdiction over Fowler's takings claim until the federal case is resolved. We disagree.

### 1.     Legal Principles

Under the priority of action rule, " 'the first court to obtain jurisdiction over a case possesses exclusive jurisdiction to the exclusion of other coordinate courts' until the controversy is resolved." *Pac. Lutheran Univ. v. Certain Underwriters at Lloyd's*, 2 Wn.3d 628, 642, 541 P.3d 358 (2024) (quoting *Am. Mobile Homes of Wash., Inc. v. Seattle-First Nat'l Bank*, 115 Wn.2d 307, 317, 796 P.2d 1276 (1990)). The rule embodies the common law principle that " 'when a court of competent jurisdiction has become possessed of a case, its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of, and no court of coordinate authority is at liberty to interfere with its action.' " *Pac.*

*Lutheran Univ.*, 2 Wn.3d at 642 (quoting *Am. Mobile*, 115 Wn.2d at 316).  The priority of action rule potentially applies to similar or parallel actions filed in a Washington federal district court and Washington state court.  *Pac. Lutheran Univ.*, 2 Wn.3d at 643; *see Bunch v. Nationwide Mut. Ins. Co.*, 180 Wn. App. 37, 39, 321 P.3d 266 (2014).

The priority of action rule does not always apply when parties file similar actions in different jurisdictions.  *King County v. Frank Coluccio Constr. Co.*, 3 Wn. App. 2d 504, 518, 416 P.3d 756 (2018).  "Washington's priority of action rule is applicable where the competing cases are identical as to subject matter, relief, and parties, i.e., are parallel actions.  If the competing actions are parallel, as a general rule, the later-filed action must abate to allow the action that was file first to continue until it reaches a resolution."  *Pac. Lutheran Univ.*, 2 Wn.3d at 642.

If the actions are not parallel, we will decide whether to apply the priority of action rule based on equitable considerations.  *Id.* at 643.  These include the "convenience of witnesses and the interests of justice, the parties' possible motivations for their filing decisions as determined from the surrounding circumstances, and the presence of venue agreements between some but not all of the various parties."  *Am. Mobile*, 115 Wn.2d at 323.  We also consider the purpose of the priority of action rule, "which is that it 'tends to prevent unseemly, expensive, and dangerous conflicts of jurisdiction and process.' "  *Pac. Lutheran Univ.*, 2 Wn.3d at 643 (quoting *Am. Mobile*, 115 Wn.2d at 317 (second internal quotation marks omitted)).

If the priority of action rule applies to a case first filed in federal court and later filed in state court, the proper remedy is to stay the state court action pending resolution of the federal court action.  *See Bunch*, 180 Wn. App. at 50-51 ("We remand with instructions for the court to stay these proceedings until such time as the federal district court determines" the defendant's

liability.); *see also Pac. Lutheran Univ.*, 2 Wn.3d at 642 ("We have acknowledged that a court may enforce this rule by enjoining parties from further action in the second-filed case.").[5]

Whether the priority of action rule applies is a legal determination that we review de novo. *Frank Coluccio Constr.*, 3 Wn. App. 2d at 518.

2.      Analysis

We conclude that the priority of action rule does not apply here for four reasons. First, DRS did not make a priority of action argument in the trial court. We generally decline to consider arguments raised for the first time on appeal. RAP 2.5(a); *Samra v. Singh*, 15 Wn. App. 2d 823, 838, 479 P.3d 713 (2020). In fact, DRS did not even raise the priority of action argument in its opening brief or in its reply brief, asserting the argument only in a supplemental brief.

Second, DRS's argument is based on its contention that Fowler did not make a Fifth Amendment takings claim in state court until 2023. As discussed in more detail below, this contention is incorrect. In 2008, Fowler alleged in their supplemental complaint that DRS's position was contrary to the prohibition against taking property in the Washington Constitution. The takings clause of article I, section 16 of the Washington Constitution generally provides similar protections as that of the Fifth Amendment. *See Wash. Food Indus. Ass'n v. City of Seattle*, 1 Wn.3d 1, 30, 524 P.3d 181 (2023) (addressing regulatory takings). And in 2009, during arguments on cross-motions for summary judgment before the trial court, Fowler expressly argued that "*the Takings Clause of the Fifth Amendment prohibits the government from*

---

[5] On the other hand, when two Washington state court actions are involved, it appears that the remedy is to dismiss the second-filed action. *E.g.*, *Frank Coluccio Constr.*, 3 Wn. App. 2d at 519; *Atlantic Cas. Ins. Co. v. Oregon Mut. Ins. Co.*, 137 Wn. App. 296, 302, 153 P.3d 211 (2007).

*appropriating accrued interest from the owners of the underlying funds.*" CP at 817. This court twice acknowledged but declined to consider Fowler's takings claim. Therefore, it is not entirely clear that the federal court was the first court to obtain jurisdiction over the takings claim.

Third, if DRS had raised the issue, the priority of action rule may have provided a basis for the trial court to stay Fowler's takings claim pending resolution of DRS's liability under the takings clause in federal court. *See Bunch*, 180 Wn. App. at 50-51. The federal district court was the first court to address the merits of DRS's takings clause liability – this court had declined to address Fowler's takings argument. However, the liability portion of Fowler's takings claim now has been resolved. The district court ruled on summary judgment that Fowler had established a takings claim against DRS, and the Ninth Circuit affirmed that ruling. So there no longer is a reason to stay the liability phase of Fowler's takings claim.

What remains in federal court is the remedy phase of Fowler's takings claim. But Fowler's state court and federal court lawsuits are not parallel actions regarding the remedy that can be ordered by the respective courts. Although the two lawsuits have the same subject matter and parties, the relief sought in each court is different. In their state court complaint, Fowler sought monetary relief, i.e., damages. In state court, if Fowler establishes takings liability through collateral estoppel or otherwise, the class members will be entitled to recover damages for the value of the property DRS took from them. *Maslonka v. Pub. Util. Dist. No. 1 of Pend Oreille County*, 1 Wn.3d 815, 825-26, 533 P.3d 400 (2023). But in federal court, the Eleventh Amendment prevents Fowler from seeking monetary damages, and their relief is limited to "[p]rospective injunctive relief." *Fowler I*, 899 F.3d at 1120. The Ninth Circuit described prospective injunctive relief in *Fowler I* as a formula to determine the amount of interest that

21

should move to the teacher's accounts. *Id.* Therefore, the federal court's decision on prospective injunctive relief will not necessarily resolve Fowler's claim for damages in state court.

Fourth, there are no equitable considerations that would compel application of the priority of action rule here. Fowler's apparent motivation in pursuing the state court claim even though it had prevailed on the takings claim in federal court was to ensure that they could recover full taking damages without the Eleventh Amendment limitation in federal court. The interests of justice do not require that Fowler be prevented from pursuing those damages in state court despite the fact that the district court may order a remedy that partially duplicates Fowler's damages claim. And as Fowler acknowledges, they will not be entitled to double recovery.

Accordingly, we hold that the priority of action rule does not apply to the current state court and federal court actions.

## C. SUBJECT MATTER JURISDICTION

DRS argues that the trial court correctly ruled that it lacked subject matter jurisdiction over this case, but erred by not dismissing the case under CR 12(h)(3). Fowler argues that the trial court erred when it ruled that it lacked subject matter jurisdiction over the merits of Fowler's class action complaint, including their takings claim. We agree that the trial court lacked subject matter jurisdiction over Fowler's APA claim, but we disagree that the trial court lacked subject matter jurisdiction over Fowler's takings claim.

### 1. Legal Principles

Subject matter jurisdiction involves the superior court's authority to adjudicate a particular type of case. *Colasurdo v. Esterline Techs. Corp.*, 25 Wn. App. 2d 154, 159, 525 P.3d 610 (2023). Article IV, section 6 of the Washington Constitution states that superior courts shall have original jurisdiction "in all cases and of all proceedings in which jurisdiction shall not have

been by law vested exclusively in some other court." Under this provision, "[t]here are very few limitations on the subject matter jurisdiction of superior courts in Washington." *Outsource Servs. Mgmt., LLC v. Nooksack Bus. Corp.*, 181 Wn.2d 272, 276, 333 P.3d 380 (2014).

If the superior court lacks subject matter jurisdiction, it must dismiss the action under CR 12(h)(3). However, " '[i]f the type of controversy is within the subject matter jurisdiction [of the superior court], then all other defects or errors go to something other than subject matter jurisdiction.' " *Colasurdo*, 25 Wn. App. 2d at 159 (quoting *Dougherty v. Dep't of Lab. & Indus.*, 150 Wn.2d 310, 317, 76 P.3d 1183 (2003)).

Under the APA, individuals may challenge the rules that an agency promulgates or the orders an agency issues through a petition for review in the trial courts or court of appeals. RCW 34.05.570(2)-(3); 34.05.514-.526. A court may remand the matter back to the agency for further proceedings. RCW 34.05.574(1). When a trial court remands an action back to an agency, "a superior court reviewing action of an administrative agency loses jurisdiction upon remand to the agency." *Pierce County Sheriff v. Civil Serv. Comm'n of Pierce County*, 98 Wn.2d 690, 695, 658 P.2d 648 (1983).

We review de novo a trial court's ruling on subject matter jurisdiction. *Colasurdo*, 25 Wn. App. 2d at 158.

### 2. Two Separate Lawsuits

There were two different lawsuits filed in the trial court: a class action lawsuit requesting declaratory, equitable and monetary relief, and a petition for review under the APA challenging DRS's denial of claims for interest accrued on retirement accounts. Those two lawsuits were consolidated into a single action. But despite the consolidation, two separate claims remained: a class action claim that included monetary relief and an APA claim.

The trial court dismissed the consolidated lawsuit in 2010, but the court addressed only the APA claim and not the class action complaint. Following this court's decision in *Probst I*, the trial court remanded the APA claim to DRS. Again, there was no reference to the class action complaint. This court affirmed that remand in *Probst II*. No. 45128-0-II, slip op. at 13. But this court in both *Probst I* and *Probst II* expressly declined to address Fowler's takings claim asserted in the class action complaint. *Probst I*, 167 Wn. App. at 183 n.1; *Probst II*, No. 45128-0-II, slip op. at 11. The trial court has never addressed the merits of Fowler's class action claim.

In 2023, the trial court ruled that it lacked subject matter jurisdiction over the APA claim. The court recognized that the case also involved a separate constitutional takings claim, but stated that jurisdiction over that claim remained in federal court while that action was pending.

### 3. Jurisdiction Over APA Claim

There is no question that the trial court lost subject matter jurisdiction over the APA claim when it remanded that claim to DRS after *Probst II* under *Pierce County Sheriff*, 98 Wn.2d at 694. Therefore, we affirm the trial court's ruling regarding that claim. And DRS is correct that the trial court should have dismissed the APA claim under CR 12(h)(3).

### 4. Jurisdiction Over Takings Claim

The trial court ruled that it had no subject matter jurisdiction over Fowler's takings claim because "jurisdiction over that claim remains there in federal court while the federal case is pending." RP at 42. However, DRS cites no authority for the proposition that a trial court automatically loses subject matter jurisdiction over a claim when the plaintiff files the same claim in federal court.

As discussed above, a state court may lose the authority to act under the priority of action rule if the plaintiff also files suit in federal court. But the trial court here did not apply that rule,

nor did DRS argue the rule. DRS argues that the trial court essentially applied priority of action principles when it ruled that it had no jurisdiction over the takings claim. But even if the trial court did apply that rule, it would not lose subject matter jurisdiction. The remedy would be to stay the state court action. *See Bunch*, 180 Wn. App. at 50-51.

Constitutional claims plainly are within the scope of the trial court's subject matter jurisdiction under article IV, section 6 of the Washington Constitution. Because the trial court never addressed Fowler's takings claim, it retained jurisdiction over that portion of the consolidated lawsuit.

DRS focuses only on the law involving remand of the APA claim, and ignores the fact that there was a separate class action complaint for monetary relief. But it is undisputed that the trial court never addressed and therefore never dismissed the takings claim. Even though the trial court remanded the APA claim, the takings claim never was resolved.

In its reply brief, DRS argues that the only remaining claim after *Probst I* was the APA claim, and the Fifth Amendment takings claim simply was not part of the case. DRS argues at length that Fowler never asserted a Fifth Amendment takings claim in any state court case.

There are two problems with this argument. First, whether Fowler asserted a *Fifth Amendment* claim does not appear to be relevant when Fowler asserted a takings claim under the Washington Constitution in their supplemental complaint. The Washington and United States Constitution's takings clauses generally are interpreted the same. *See Wash. Food Indus. Ass'n*, 1 Wn.3d at 30. Therefore, Fowler could recover takings damages under the Washington Constitution even if it never pleaded a Fifth Amendment claim. *See Maslonka*, 1 Wn.3d at 825.

Second, DRS's argument appears to relate to whether Fowler properly pleaded a Fifth Amendment takings claim under CR 8(a), not whether the trial court had jurisdiction. Whether

Fowler properly pleaded a particular claim has nothing to do with jurisdiction. The trial court had jurisdiction over Fowler's case regardless of any pleading deficiencies.

Accordingly, we hold that the trial court erred when it ruled that it lacked subject matter jurisdiction over Fowler's takings clause claim.

D.     FOWLER'S SUMMARY JUDGMENT MOTION

Fowler argues that the trial court erred on the merits by denying their summary judgment motion on their takings claim. We decline to address this issue.

The trial court denied Fowler's summary judgment motion based on lack of jurisdiction, not on the merits. As discussed above, we reverse in part the trial court's jurisdiction ruling. But the trial court has not had the opportunity to address the merits of Fowler's takings claim, including the parties' collateral estoppel arguments. And the Ninth Circuit's decision in *Fowler II* had not been issued when the trial court denied the summary judgment motion. Therefore, we remand for the trial court to consider Fowler's summary judgment motion in light of recent developments.

E.     EVIDENTIARY ISSUES

Fowler argues that the trial court should have struck the testimony of DRS's actuarial experts. But the trial court did not rule on this issue at summary judgment because it denied both parties' motions. Accordingly, we decline to address this issue. The trial court on remand can address the admissibility of DRS's expert testimony.

F.     ATTORNEY FEES ON APPEAL

Fowler requests attorney fees under RAP 18.1(a) and the common fund doctrine. We decline to award attorney fees.

RAP 18.1(a) permits this court to grant attorney fees to a party "[i]f applicable law grants to a party the right to recover." The common fund (or common benefit) theory is an equitable basis for granting attorney fees. *Bowles v. Dep't of Ret. Sys.*, 121 Wn.2d 52, 70, 847 P.2d 440 (1993). The common fund doctrine "authorizes attorney fees only when the litigants preserve or create a common fund for the benefit of others as well as themselves." *Id.* at 70-71. In common fund cases, courts generally apply a percentage of recovery approach. *Id.* at 73.

In *Bowles*, the trial court awarded attorney fees to the attorneys representing class action plaintiffs against DRS. *Id.* at 61. The Supreme Court held that a lawsuit securing additional benefits under the PERS I plan was eligible for attorney fees under the common fund doctrine because the lawsuit "secured additional pension benefits for many other PERS I members." *Id.* at 71. But the court declined to award attorney fees on appeal because "[u]nder the percentage of recovery approach, the attorneys are to be compensated according to the size of the judgment recovered, not the actual hours expended." *Id.* at 75. Because the appeal did not increase the size of recovery, appellate attorney fees were not appropriate under the common fund doctrine. *Id.*

Here, the trial court has not ruled on attorney fees because it has not entered a judgment on liability. The common fund doctrine may apply if Fowler secures benefits for the entire class, but it is premature for us to rule on any common fund doctrine issue. And similar to *Bowles*, an award of attorney fees to Fowler is inappropriate on appeal because the common fund doctrine permits attorney fees as a percentage of the recovered amount. Fowler has not yet recovered any amount.

Accordingly, we decline to address the common fund doctrine issue and deny appellate attorney fees.

CONCLUSION

We affirm the trial court's ruling that it lacked subject matter jurisdiction over the APA claim, reverse the trial court's ruling that it lacked subject matter jurisdiction over Fowler's takings claim, and remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
VELJACIC, A.C.J.

_____
LEE, J.